**Billy Lee JARVIS, Plaintiff–**
**Appellant/Cross/Appellee,**

v.

**NOBEL/SYSCO FOOD SERVICES**
**COMPANY, Defendant–Appel-**
**lee/Cross–Appellant,**

**and**

**Local 435 Delivery Drivers, Ware-**
**houseman and Helpers, Defen-**
**dant–Appellee.**

Nos. 91–1225, 91–1256.

United States Court of Appeals,
Tenth Circuit.

Feb. 12, 1993.

David L. Smith, Denver, CO, for plaintiff-appellant/cross-appellee.

Theodore Olsen (James E. Hautzinger and Andrew W. Volin, on the briefs), of Sherman & Howard, Denver, CO, for defendant-appellee/cross-appellant Nobel/Sysco Food Services Co.

Eugene A. Duran, General Counsel, Delivery Drivers, Warehousemen and Helpers, Local Union No. 435, Denver, CO, for defendant-appellee Local 435.

Before McKAY, Chief Judge, SETH and BRORBY, Circuit Judges.

McKAY, Chief Judge.

Plaintiff, Billy Lee Jarvis, was employed by Defendant Nobel/Sysco Food Service Company and was a member of Defendant Delivery Drivers, Warehousemen and Helpers, Local Union No. 435. On September 21, 1988, he took a leave of absence from Nobel because of a work-related injury to his left wrist. He returned to work under medical restrictions on August 21, 1989, but was asked to leave within three hours. On September 22, 1989, Nobel terminated his employment pursuant to a provision in the collective bargaining agreement limiting leaves of absence to twelve months.

Plaintiff presented a grievance through the Union claiming that his brief return on August 21 began a new twelve-month leave of absence period under the collective bargaining agreement. After several months, the Union informed him in writing that his grievance would not be processed. The letter also noted that the Union did not believe he had a valid claim against Nobel.

Plaintiff then filed suit against both Nobel and the Union. Against Nobel, Plaintiff claimed (1) breach of the collective bargaining agreement in violation of § 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1988); (2) handicap discrimination in violation of the Colo.Rev. Stat. § 24–34–301 *et seq.* (1988); and (3) retaliatory discharge in violation of Colorado case law. Against the Union, he claimed (1) breach of the duty of fair representation in violation of § 301, and (2) aiding and abetting Nobel's handicap discrimination.

After answering the complaint, Nobel and the Union both sought to dismiss the case. Nobel moved for summary judgment, while the Union moved to dismiss for failure to state a claim. The district court converted the Union's motion to dismiss into a motion for summary judgment and granted summary judgment as to everything except the state retaliatory discharge claim. Having dismissed all the federal

claims, the district court declined to exercise pendent jurisdiction over the remaining state law claim. Plaintiff appealed, and Nobel cross-appealed.[1]

We affirm.

## I

The first issue presented is the propriety of granting summary judgment to Nobel and the Union on the 301 claim. The plaintiff's burden in these cases was laid out by the Supreme Court in *Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990).

> Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance. Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation.

*Id.* 494 U.S. at 564, 110 S.Ct. at 1344 (citations omitted). The Supreme Court has also held that a duty of fair representation (DFR) claim must show that the union's "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

As Nobel pointed out in its motion for summary judgment, Plaintiff presented no evidence showing that the Union breached its duty of fair representation. Accordingly, the district court granted summary judgment to both Nobel and the Union.

## A

Plaintiff asserts that he was unable to meet the motion for summary judgment because he was not given an opportunity to conduct discovery. In support of this contention, he filed an affidavit in the district court pursuant to Fed.R.Civ.P. 56(f) stating his inability to meet Nobel's summary judgment motion without further discovery.[2] Thus, he claims, the court erred in dismissing his complaint without giving him a fair chance to respond.

Plaintiff's 56(f) affidavit (the relevant portion of which is set out below),[3] however, was deficient in two key ways. First, it merely states in conclusory terms that he is unable to obtain the information and that he could conduct discovery if given more time. This is inadequate. While we agree that 56(f) affidavits "should be treated liberally unless dilatory or lacking in merit," *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir.1984), our cases have established that this kind of conclusory affidavit is insufficient.

> [A] mere assertion "that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." Rather, the party filing the affidavit must show how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

---

**1.** Since neither party presents any issues on appeal regarding the dismissal of the handicap discrimination claim, we do not consider it.

**2.** Rule 56(f) provides that a court may decline a motion for summary judgment if "a party opposing the motion ... cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f).

**3.** [T]he Plaintiff cannot present by affidavit facts essential to justify his opposition to the Motion because essential facts are exclusively in the knowledge and control of the opposing party....

Additional time will enable the Plaintiff to take depositions and conduct other discovery regarding Defendant Nobel/Sysco's reasons for terminating the Plaintiff from his employment.

*Id.* (citations omitted).[4]

■ Secondly, and more importantly, both the 56(f) affidavit and Plaintiff's personal affidavit are entirely focused on the circumstances of his dismissal from the company. Neither document makes any reference to the conduct of the Union other than to note that the grievance was withdrawn. Given Plaintiff's burden of proving the elements of a DFR breach, he could not avoid summary judgment under Rule 56(f) without detailing by affidavit the evidence he expected to discover regarding the Union's decision not to pursue his grievance.[5]

### B

■ Plaintiff also claims that, without regard to his 56(f) affidavit, Nobel is not entitled to summary judgment on this record. Primarily, he claims that under *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Nobel's motion is insufficient because it failed to present any evidentiary materials in support of Nobel's contention that the Union did not commit a DFR breach.

This argument is without merit. The question addressed in *Celotex* was whether the failure to present any evidentiary materials necessarily dooms a motion for summary judgment. Plaintiff claims that *Celotex* answered in the affirmative. In fact, the Supreme Court unequivocally rejected this position, stating that it "find[s] no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* 477 U.S. at 323, 106 S.Ct. at 2553.

### II

■ Plaintiff claims that the entry of summary judgment in favor of the Union was unfair because he did not receive adequate notice that the Union's motion to dismiss had been converted into a motion for summary judgment. Ordinarily, we would give such a claim extremely close scrutiny, as "[t]he notice of conversion of a Rule 12 motion to a Rule 56 motion and the consequences of a failure to notify are serious business." *Prospero Assocs. v. Burroughs Corp.*, 714 F.2d 1022, 1028 (10th Cir.1983) (McKay, J., dissenting). However, under the facts of this case, we affirm.

Initially, we note that Plaintiff had an opportunity to object to the conversion of the Rule 12 motion to a Rule 56 motion. At the beginning of hearing on the motions to dismiss, the court stated, "[The Union] has filed a motion to dismiss ... which I assume we will treat as a summary judgment since it was filed subsequent to the actual complaint." (Appellant's App. at

---

(Appellant's App. at 22.)

**4.** At oral argument, Jarvis's counsel claimed that the holding of *Patty Precision* is no longer good law because of the Supreme Court's intervening statement that the requirements for summary judgment are "qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986). On the contrary, this footnote was merely a notation that *Anderson* did not alter the traditional provisions of Rule 56(f).

Counsel also claimed at oral argument that this standard makes it impossible to prove labor claims such as this, where the knowledge of the basis for dismissing the grievance is known only to a hostile party. This argument misses the point. When a plaintiff has no evidence whatsoever that his union committed a DFR breach, but merely suspects that he could find such evidence if given a chance, he is not entitled to

pursue such a fishing expedition in federal court.

**5.** In supplemental authority presented to the district court after the hearing on the motion for summary judgment, Plaintiff argues that he is not required to prove a DFR breach if "his attempts to exhaust contractual remedies were rendered futile by the concerted handicap discrimination between the Company and the Union alleged in ... his complaint." (Appellant's Opening Br. at 11.) He cites *Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) and *Varra v. Dillon Cos.*, 615 F.2d 1315 (10th Cir.1980).

The cases cited do not support his argument. They are procedural cases that merely state that under certain circumstances, plaintiffs are not required to pursue every aspect of the grievance process prior to filing suit. Neither defendant, however, has claimed that Plaintiff's suit is unripe because of failure to exhaust contractual remedies. These cases are entirely inapplicable to the need to prove a DFR breach.

230.) If this assumption was incorrect, it was the duty of Plaintiff's counsel to request more time to respond to the conversion. No such request was made.

This issue is controlled by *Prospero, supra,* which has very similar facts. In both cases the opposing party had actual notice that the Rule 12 motion was being converted to a Rule 56 motion, and in both cases the opposing party failed to object. In one crucial way, this case is clearer than *Prospero*—exactly the same issue was properly raised in a summary judgment motion by a codefendant and was explicitly discussed in the codefendant's brief. Thus, Plaintiff may not be heard to complain that he did not receive "an adequate opportunity to respond to [a] new issue." *Prospero,* 714 F.2d at 1028 (McKay, J., dissenting). In fact, having affirmed as to Nobel, were we to reverse as to the Union, non-mutual collateral estoppel would likely provide a second basis for a grant of summary judgment. We therefore find no error.

### III

■ Plaintiff further claims that the district court abused its discretion by declining to exercise pendent jurisdiction over the remaining state retaliatory discharge claim against Nobel. The record reveals that the district court dismissed all the federal claims before trial. Further, the record shows that no discovery had been conducted. The only activity relevant to the retaliatory discharge claim was the district court's denial of Nobel's motion for summary judgment on federal preemption grounds. Under such circumstances, the district court's dismissal of the state claims was not an abuse of discretion.[6]

### IV

In the district court, Nobel moved for summary judgment on the retaliatory discharge claim on the basis of preemption by § 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1988). After the district court denied this motion, but granted summary judgment on all other claims, Plaintiff attempted to pursue discovery for this claim. Nobel then filed a motion asking the district court to decline to exercise pendent jurisdiction over this sole remaining state law claim. The district court granted this motion.

Nobel now seeks to cross-appeal from the denial of its earlier motion for summary judgment on preclusion grounds. Nobel asks that this court reverse and remand with instructions to dismiss the retaliatory discharge claim with prejudice. Essentially, it argues that while it was the party moving for dismissal without prejudice, it retains its right to appeal the district court's ruling on the prior summary judgment motion.

### A

■ As an initial matter, we must consider our jurisdiction over this appeal. The posture of this cross-appeal is a bit unusual, as Nobel has prevailed both in the district court and on the primary appeal. This fact does not, however, bar Nobel from pursuing its appeal.

> While it is the general rule that a party cannot appeal from a judgment in his favor, the rule is not absolute, and where a judgment gives the successful party only part of that which he seeks and denies him the balance, with the result that injustice has been done him, he may appeal from the entire judgment.

*Automobile Ins. Co. v. Barnes–Manley Wet Wash Laundry Co.,* 168 F.2d 381, 386 (10th Cir.1948), *cert. denied,* 335 U.S. 859, 69 S.Ct. 132, 93 L.Ed. 406 (1948).

■ In addition, Nobel did not waive this issue by subsequently moving to dismiss without prejudice on jurisdictional grounds. Nobel had already requested a dismissal with prejudice, which the district court had denied. Nobel was now facing the possibility of a long and costly litigation on the remaining issue, which it might avoid through the jurisdictional dismissal. Hav-

---

**6.** Because we affirm the·dismissal of this claim, we do not reach the discovery issues relating to it that Plaintiff presents.

ing failed to achieve its ultimate goal, it was entitled to take what they could and appeal. "A party may accept what is securely his and appeal seeking more." *Kuba v. Ristow Trucking Co.*, 811 F.2d 1053, 1055 (7th Cir.1987).

This view of our jurisdiction is supported by *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), in which the Supreme Court allowed a plaintiff who fully prevailed on the merits of his suit to appeal the denial of class certification. While acknowledging the general rule that "only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom," *id.* at 333, 100 S.Ct. at 1171, the Court stated: "In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III." *Id.* at 333–34, 100 S.Ct. at 1171–72. The Court cited *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1939), in which the defendant who prevailed on a patent infringement suit on the grounds of non-infringement was nonetheless entitled to appeal a determination that the patent was valid. *Roper*, 445 U.S. at 334–35, 100 S.Ct. at 1171–72. The *Roper* Court concluded that if a successful appeal would alter either litigation costs, as in *Roper* itself, or the future application of issue preclusion, as in *Electrical Fittings*, the personal stake requirement of Article III was met. *Roper*, 445 U.S. at 336–37, 100 S.Ct. at 1173.

In this case, a successful appeal by Nobel would eliminate any possible re-filing of the retaliatory discharge claim in state court. As avoiding a state court suit would substantially reduce Nobel's future litigation costs, we find that Nobel has the requisite stake in this appeal.

█ Nobel also has a valid stake in the preclusive effects of the trial court's decision. Because the preemption issue was raised and determined on motions for sum-

mary judgment, and because the trial court's ruling was essential to its decision to dismiss without prejudice on jurisdiction grounds rather than with prejudice on the merits, the requirements of issue preclusion are met. *See Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1523 (10th Cir.1987); *Restatement (Second) of Judgments* § 27 cmts. d & j (1982). The fact that this issue involves the application of legal principles to a given set of facts does not block issue preclusion. *See Montana v. United States*, 440 U.S. 147, 162–63, 99 S.Ct. 970, 978–79, 59 L.Ed.2d 210 (1979) (stating that issue preclusion applies to questions of law unless they "involv[e] unrelated subject matter"); *Restatement (Second) of Judgments* § 27 (referring to "an issue of fact or law"); *id.* § 27, reporter's note at 264 ("the Section is now applicable to questions of law and law application as well as questions of fact"); 18 Charles Alan Wright et al., *Federal Practice and Procedure*, § 4425 at 243 ("Preclusion generally is appropriate if both the first and second action involve application of the same principles of law to an historic fact setting that was complete by the time of the first adjudication.").

*Pell v. Azar Nut Co.*, 711 F.2d 949 (10th Cir.1983), is also not to the contrary. In that case, we dismissed the appeal of a defendant who, like Nobel, was aggrieved by a dismissal without prejudice. The trial court, however, had explicitly "refuse[d] to decide" the merits of the defendant's motion for summary judgment. *Id.* at 950 (quoting the record in that case). As such, the defendant presented "an issue not passed upon below," which appellate courts generally will not consider. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Pell*, 711 F.2d at 950. In contrast, the district court in the present case ruled upon Nobel's motion, so *Pell* is not on point.

█ We conclude that when a district court denies summary judgment on the merits, and then exercises its discretion to decline pendent jurisdiction, the moving party is "a party aggrieved by a judgment," *Roper*, 445 U.S. at 333, 100 S.Ct. at

1171, and has an appeal as of right on the merits of the denial of summary judgment.[7]

## B

■■■ The issue of preemption of retaliatory discharge cases is controlled by *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), in which the Supreme Court found no preemption. In *Lingle*, a worker brought a retaliatory discharge claim after his employer, accusing him of filing a false workers compensation claim, fired him pursuant to a "just cause" provision of the collective bargaining agreement. The Supreme Court stated:

> [The elements of retaliatory discharge under Illinois law] pertain [ ] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

*Id.* 486 U.S. at 407, 108 S.Ct. at 1882 (citations omitted).

The Court, however, did not foreclose the possibility that some retaliatory discharge claims may be preempted, as in some instances adjudication of the claims may require interpretation of the collective-bargaining agreement. *Id.* at 408–10, 108 S.Ct. at 1882–84. Indeed, research has revealed two cases where unusual facts or law did lead to preemption in retaliatory discharge cases. *Doran v. Thermatex Corp.*, No. C88–873Y, 1989 WL 163700, at *3, 1989 U.S. Dist. Lexis 16312, at *10 (N.D.Ohio July 31, 1989) (preemption does not apply because the complaint, while citing retaliatory discharge, was "based upon the claim that the employer engaged in an erroneous interpretation of the collective bargaining agreement,") *cited in Marshall v. TRW, Inc.*, 900 F.2d 1517, 1522 (10th Cir.1990); *Magerer v. John Sexton & Co.*, 912 F.2d 525, 529 (1st Cir.1990) (Massachusetts retaliatory discharge law specifically deferred to the terms of the applicable CBA).

■■■ In every other case we have found, however, including *Marshall, supra; Davies v. American Airlines*, 971 F.2d 463 (10th Cir.1992) (interpreting the Railway Labor Act under *Lingle*); and *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo.Ct. App.1989), the courts have not found preemption. The essential reason was expressed in *Davies*, applying Oklahoma law:

> The gravamen of [this] action is that American's actual or primary motivation in firing [the plaintiff], irrespective of any "just cause" it may have had under the CBA, was to stop his unionizing activity. Thus, we hold, pursuant to *Lingle* and *Marshall*, that Davies' :.. action does not require interpretation of the CBA and is therefore not preempted....

---

7. *Great American Audio Corp. v. Metacom, Inc.*, 938 F.2d 16, 19 (2d Cir.1991), and *Armotek Industries, Inc. v. Employers Insurance Co.*, 952 F.2d 756, 759 n. 3 (3d Cir.1991), are not to the contrary. Both cases merely state that when a prevailing party urges an alternate ground in support of the judgment that the trial court rejected, it may argue that as appellee and not as cross-appellant. The parties cross-appealing in these cases were not asking that the judgment itself be altered in any way, only that the reasoning underlying it be altered. Thus, their cross-appeals were dismissed.

The denial of a cross-appeal to the parties in those cases is not inconsistent with allowing Nobel's cross-appeal. An affirmance that did not address their arguments did not expose those appellees to increased litigation costs, because the judgment would not change. Similarly, they did not face the risk of future issue preclusion, because, given their complete victories below, any conclusions of the trial court adverse to their interests necessarily were not essential to the judgment.

*Davies,* 971 F.2d at 466. So long as the state law cause of action is concerned not with the employer's contractual right to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply.

This situation is present under Colorado law. The tort of retaliatory discharge evolved as an exception to the historic right of employers to terminate employees at will. *Martin–Marietta Corp. v. Lorenz,* 823 P.2d 100, 104–05 (Colo.1992). The purpose of these actions was to override the contractual rights of the employer, whatever they may be, when the employer's motive in exercising those rights "contravenes a clear mandate of public policy." *Id.* at 107 (quoting *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1089 (1984)). Thus, in a retaliatory discharge suit under Colorado law, the employer's contractual rights are not relevant, because any such rights give way to the employee's statutory right to be free from retaliation. Plaintiff's retaliatory discharge claim is therefore not preempted by § 301.

Attempting to escape from this rule, Nobel argues that the CBA did not *allow* it to fire Plaintiff—it *required* the termination of his employment. Therefore, Nobel states, "Nobel's non-retaliatory explanation for Jarvis' termination requires an interpretation of the [CBA]." (Br. of Nobel at 38–39.) We disagree. Rather, we view Nobel's non-retaliatory explanation of Plaintiff's termination as merely their interpretation of the CBA. So long as this interpretation was made in good faith and actually motivated Nobel's actions, they present a good defense without regard to the correctness of the interpretation. Assuming without deciding that Plaintiff has sufficient evidence of a retaliatory motive to present a genuine issue for trial, Nobel's contention that it was motivated by its understanding of the CBA is a factual matter for the jury, not a legal interpretation of the CBA, which remains in the province of a labor arbitrator.

Nobel's argument is not substantially different from that rejected in *Davies,* where the defendant argued that it dismissed the plaintiff pursuant to a "just cause" provision of the CBA. We stated in that case that "[e]ven if the employee violated the employer's rules, giving the employer 'just cause' to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." *Davies,* 971 F.2d at 466. Similarly, the question in the present case is whether the employer's motivation for the discharge was its understanding of the CBA or retaliation. In neither case is the correctness of the employer's interpretation of the CBA at issue.

We conclude that the retaliatory discharge claim does not require interpretation of the CBA, and is therefore not preempted by § 301.

We AFFIRM.