Clayton NOLAN, Plaintiff,

v.

SUNSHINE BISCUITS, INC., Defendant.

No. 95–2022–JWL.

United States District Court,
D. Kansas.

Feb. 13, 1996.

Gene P. Graham, Jr., Rebecca L. Rolf, White, Allinder & Graham, L.L.C., Independence, MO, for Clayton Nolan.

John R. Phillips, Brian J. McGrath, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Sunshine Biscuits, Inc.

Richmond M. Enochs, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Chris Hansen.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I.   Introduction

This case comes before the court on the defendant's motion (Doc. # 49) for summary judgment pursuant to Fed.R.Civ.Pro. 56(c).

The defendant argues that the plaintiff cannot state a prima facie case for disability discrimination under the Americans with Disabilities Act ("ADA") or the Kansas Act Against Discrimination ("KAAD") because the plaintiff is not disabled and because the plaintiff has no evidence that the defendant violated the ADA or KAAD.  The defendant also argues that the plaintiff's retaliation claims are pre-empted by § 301 of the Labor Management Relations Act and, in the alternative, that the plaintiff cannot state a prima facie case for retaliation.  For the reasons discussed below, the defendant's motion for summary judgment is granted in part and denied in part.

### II.   Facts

The following facts are either uncontroverted or, if controverted, construed for the purposes of resolving this motion in the light most favorable to the non-moving party.  In December of 1992, while working in the defendant's production department, the plaintiff caught his left hand in a Cheez–It bagging machine.  The machine crushed the tip of the plaintiff's left thumb and burned the left index finger.  As a result of the accident and subsequent complications, the plaintiff's left thumb was partially amputated, his left hand is curled and neither the left index finger or thumb can be straightened or closed into a fist.

On March 26, 1993, the plaintiff was released for work with a one-handed, light duty restriction.  In recognition of his condition, the defendant assigned the plaintiff to jobs that permitted use of one hand only, gave the plaintiff the ability to report his pain to supervisors and request and obtain work at a slower pace.  Because his pain threshold varied daily, the plaintiff was not able to perform the same job duties everyday.  When the plaintiff indicated that he was experiencing pain and requested another position, the defendant never denied his request.  Sometimes, however, the change would take more than an hour to complete and the plaintiff was occasionally re-assigned to a job that had caused him pain in the past.

On October 11, 1993, the plaintiff sprained his left index finger while playing with his

children. Several days later, the plaintiff fractured that finger at work. The next day, the plaintiff had surgery on his left index finger. Despite the surgery, the finger healed at an improper angle. In late October of 1993, the plaintiff was given a medical release permitting him to resume work with similar restrictions as his previous release.

Following his injury,[1] the plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA") against the defendant alleging, in part, that the safety mechanism on the machine on which he was injured had been bypassed. OSHA's subsequent investigation resulted in the defendant paying a $1,125.00 abatement.

Concerned that he had been assigned to a job he could not perform with his work restrictions, the plaintiff filed a grievance with his union in January of 1994. As a result of the grievance, the defendant removed the plaintiff from that position. In February of 1994, the defendant suspended the plaintiff. The parties dispute the reason for the suspension.

On May 3, 1994, Dr. Storm operated on the plaintiff's index finger, fusing the middle joint. On May 9, 1994, Dr. Storm gave the plaintiff a release to return to work but did not orally inform the plaintiff of his clearance. The plaintiff did not examine the release until after he returned home. Even after examining the release, however, he remained confused about whether he was cleared for work and if any work restrictions existed.

Due to his injuries, the plaintiff filed a workers' compensation claim on May 2, 1994. Chris Hansen, a compensation adjuster for Crum and Forster, handled the plaintiff's claim. The plaintiff called Mr. Hansen on May 10, 1994, to inquire about the release, but Mr. Hansen was unavailable and did not return the plaintiff's call. The plaintiff did not personally report his availability for work to the defendant, but called work daily to see if he was scheduled. He was not scheduled from May 9 until his termination.

On May 13, 1994, John Lallement, the defendant's human resource manager, wrote the plaintiff a letter that in its entirety read:

It is my understanding that you were released for light duty effective Tuesday, May 10, 1994. As you know, we have light duty available.

Why have you not made yourself available? Please respond immediately.

The plaintiff received the letter the next day. On May 17, 1994, Mr. Lallement terminated the plaintiff's employment, citing the plaintiff's failure to comply with the requirements that the defendant believes the collective bargaining agreement imposes. Specifically, the defendant believes that the plaintiff was lawfully terminated pursuant to Article 18 of the collective bargaining agreement, which provides that an employee will lose his seniority if he is absent for three consecutive work days without notifying the defendant and that an employee who has been sick for over five days must present a release to the defendant before returning to work. *Collective Bargaining Agreement*, Art. 18 § 6 & § 11. The defendant appears to contend that because the plaintiff did not *personally* notify the defendant for three consecutive days that he had been released to return to work on May 9, 1995, the plaintiff breached the collective bargaining agreement and the defendant could lawfully terminate him. The plaintiff contends that the facts do not indicate that he violated Article 18 of the collective bargaining agreement because the defendant was aware of his release within the time required by the applicable section of Article 18. Although the plaintiff did not personally deliver it, it is clear that the defendant knew of the plaintiff's release by May 17, 1995.

The plaintiff asserts that his injury affects his daily routine. The plaintiff alleges that he has difficulty buttoning or tying clothing, bathing parts of his body, eating, preparing food, cleaning up, and various other activities. Further, while he can still do yard work, his stamina has lessened. Nevertheless, despite his injury, the plaintiff practices sports with his children including basketball,

---

**1.** It is unclear from the parties' submissions whether the plaintiff filed his OSHA complaint after his first or second injury at work.

baseball, and football. In addition, in October of 1993, the plaintiff played basketball with his coworkers. The plaintiff also helped a neighbor build a kids' clubhouse in the summer of 1994.

Since his termination by the defendant, the plaintiff has obtained other employment. The plaintiff worked for a company replacing window awnings but resigned because his injury did not allow him to do the work. The plaintiff also worked at a service station and presently works for Alliance Shippers, tracing trailers shipped by rail to ensure proper and timely delivery.

## III.  Discussion

### A.  Standard for summary judgment

■ When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific*

*R.R., Co.*, 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### B.  Analysis

#### 1.  ADA and KAAD [2]

■ The defendant contends that the plaintiff cannot establish a prima facie case of disability discrimination. The court agrees. In order to state a prima facie case of disability discrimination under the ADA or the KAAD, the plaintiff must establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe) he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995).

#### a.  Disability

■ The ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA does not define the term "major life activities," but the Tenth Circuit has found that the EEOC regulations issued to implement it, 29 C.F.R. § 1630, are instructive. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994). "The term 'means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.'" *Id.* (citing 29 C.F.R. § 1630.2(i)). The *Bolton* court concluded that three factors should be considered when determining whether an impairment substantially limits a major life activity of an individual: (1) the

---

**2.** The term "disability" is defined similarly under the ADA and the KAAD. *See McDonald v. State of Kansas Dept. of Corrections*, 880 F.Supp. 1416, 1424 (D.Kan.1995) (holding that the plaintiff's disability discrimination claim under KAAD must

meet the same fate as the plaintiff's disability discrimination claim under the ADA). Therefore, the court will address the defendant's motion for summary judgment on the plaintiff's claims for disability discrimination together. *Id.*

nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *Id.* at 943.

■ To demonstrate that an impairment substantially limits the major life activity of working, an individual must show "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform a single, particular job is insufficient. *Id.; Bolton,* 36 F.3d at 942; *see also Welsh v. City of Tulsa,* 977 F.2d 1415, 1417, 1419 (10th Cir.1992) (While major life activity includes working, it does not necessarily mean working at the job of one's choice. An impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Rehabilitation Act [3]).

In addition to the three factors already discussed (nature and severity, duration, long-term impact), the Tenth Circuit has indicated that three other factors may be considered when determining whether a plaintiff has shown a substantial limitation in the major life activity of working: (1) the geographical area to which the individual has reasonable access; (2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). *Bol-*

*ton,* 36 F.3d at 943; 29 C.F.R. § 1630.2(j)(3)(ii).

Mr. Nolan has presented no evidence showing that he is restricted from performing a class of jobs. The evidence does not address Mr. Nolan's vocational training, the geographic area to which he has access, or the number of or type of jobs demanding similar training from which Mr. Nolan would also be disqualified. *See Bolton,* 36 F.3d at 944. The plaintiff's evidence, which primarily consists of Mr. Nolan's opinion and a vague affidavit from Dr. James Hopkins, provides no basis for the court to conclude that Mr. Nolan is disabled as defined under the ADA. Because the plaintiff failed to produce evidence showing a significant restriction in his ability to perform either a class of jobs or a broad range of jobs in various classes, *Id.* (citing 29 C.F.R. § 1630.2(j)(3)(i)), the court must grant the defendant's summary judgment on the plaintiff's ADA and KAAD disability discrimination claims.

### b. *Qualified*

■ In addition, the court finds that summary judgment is also proper on the separate ground that there has been no showing that the plaintiff is a "qualified individual," the second element of a prima facie case. He has not shown that with or without an accommodation he could have performed the essential functions of a position with the defendant that he is willing to accept, that he can perform, and that he is eligible for under the collective bargaining agreement.

■ The plaintiff bears the initial burden to make a facial showing that accommodation is possible. *White,* 45 F.3d at 361–62 (citing *Mason v. Frank,* 32 F.3d 315, 318 (8th Cir.1994); *Barth v. Gelb,* 2 F.3d 1180, 1187 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994); *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir. 1991)). The burden of production then shifts to the employer to present evidence of its inability to accommodate. *Id.* "If the employer presents such evidence, the plaintiff

---

**3.** The ADA expressly requires its provisions to be interpreted in a way that "prevents imposition of inconsistent or conflicting standards for the same requirements" under the Rehabilitation Act of

1973. *White v. York Int'l Corp.,* 45 F.3d 357, 360 n. 5 (10th Cir.1995) (citing 42 U.S.C. § 12117(b)).

may not simply rest on his pleadings. He 'has the burden of coming forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence.'" *Id* (citing *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 308 (5th Cir.1981)). The court believes that the plaintiff has not met his burden of showing accommodation is possible and that the defendant has made a good faith effort to accommodate the plaintiff in every way requested by the plaintiff. Therefore, the court concludes that the plaintiff is not a qualified individual as required under the ADA and summary judgment is appropriate.

### 2. Pre-emption under Labor Management Relations Act

 The defendant argues that § 301 of the LMRA pre-empts the plaintiff's retaliation claims because they are state common law claims and because the resolution of those claims depends on the analysis of the terms of the collective bargaining agreement between the plaintiff's union and the defendant. The court disagrees. In *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419 (10th Cir.1993), the Tenth circuit addressed this exact issue. The *Jarvis* court stated that

> "So long as the state law cause of action is concerned not with the employer's contractual right to discharge the employee, but rather with its motives in exercising that, the CBA [collective bargaining agreement] is not relevant and preemption does not apply." *Id.* at 1427.

The *Jarvis* court went on to state that "we view [the defendant's] non-retaliatory explanation of Plaintiff's termination as merely [its] interpretation of the CBA." *Id.* The *Jarvis* court concluded that the defendant could raise its interpretation of the collective bargaining agreement as a defense to the retaliatory discharge claim and that the defendant's contention that whether it "was motivated by its understanding of the CBA is a factual matter for the jury, not a legal interpretation of the CBA." *Id.* Therefore, the court concludes that Mr. Nolan's retaliatory discharge claims do not require the interpretation of the collective bargaining agreement and are not pre-empted by the LMRA. *Id.*

### 3. State law retaliation claims

 To establish a prima facie case of workers' compensation retaliatory discharge, the plaintiff must show (1) that he filed a claim for worker's compensation benefits or sustained an injury for which he could assert a future claim for benefits, (2) that the defendant had knowledge of the plaintiff's injury, (3) that the defendant terminated the plaintiff's employment, and (4) that a causal connection exists between the plaintiff's exercise of his worker's compensation rights and his termination. *Robinson v. Wilson Concrete Co.*, 913 F.Supp. 1476, 1482–83 (D.Kan.1996). To establish a prima facie case of retaliation based on whistle blowing, an employee must show (1) that a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare, (2) that the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee, and (3) that the employee was discharged in retaliation for making the report. *Enfinger v. Wolf Creek Nuclear Operating Corp.*, No. 95–4071–SAC, 1995 WL 783211 at *5 (D.Kan. Oct. 27, 1995). However, the whistle blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain. *Id* (citing *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988)).

 The standard of proof for a retaliatory discharge claim is proof by a preponderance of the evidence that is clear and convincing in nature. *Robinson*, 913 F.Supp. at 1482–83 (citing *Ortega v. IBP, Inc.*, 255 Kan. 513, 527, 874 P.2d 1188 (1994)). Evidence is clear if it is certain, unambiguous, and plain to the understanding. *Ortega*, 255 Kan. at 528, 874 P.2d 1188. Evidence is convincing if it is reasonable and persuasive enough to cause the trier of fact to believe it. *Id.* Under Kansas law, clear and convincing evidence is not a quantum of proof, but rather a quality of proof. *Id.* Ultimately, it is

the plaintiff's burden to show that the discharge was "based on" the exercise of rights under the Workers' Compensation Act, *see Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 147–48, 815 P.2d 72 (1991), or whistle blowing. *See Enfinger,* 1995 WL 783211 at *5.

█ For the purposes of this motion, the defendant does not dispute that the plaintiff has satisfied the first three elements of a workers' compensation retaliation claim and the first two elements of a whistle blowing retaliation claim. The defendant asserts that the plaintiff has not produced clear and convincing evidence demonstrating a causal connection between the plaintiff's protected activity and his termination. The court disagrees. Construing the facts in a light most favorable to the plaintiff, the evidence indicates that the plaintiff's termination occurred shortly after he engaged in protected activity, that the defendant was not pleased with the ramifications of the plaintiff's protected activity, and that the defendant did not treat the plaintiff the same as other employees who had work related injuries and work releases from their doctors. The court believes that this evidence is clear and convincing in nature and, therefore, the plaintiff has met the requisite standard with respect to the causal connection between his protected activity and his termination. *Ortega v. IBP, Inc.,* 255 Kan. 513, 874 P.2d 1188 (1994). As a result, the court denies the defendant's motion for summary judgment because the defendant has not shown that there is an absence of evidence to support the plaintiff's retaliation claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. # 49) is granted with respect to the plaintiff's disability discrimination claims under the ADA and the KAAD and denied with respect to the plaintiff's state law retaliation claims.

**IT IS SO ORDERED.**