Steven SOUTH, Plaintiff,

v.

NMC HOMECARE, INC., Defendant.

Civil Action No. 95–2396–GTV.

United States District Court,
D. Kansas.

Oct. 30, 1996.

Elizabeth A. Kaplan, Benien & Kaplan, Chtd., Kansas City, KS, for plaintiff.

Sally A. Howard–Clayton, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

In this action, plaintiff claims to have been discharged in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Kansas Act Against Discrimination ("KAAD"), K.S.A. 44–1001 *et seq.*[1] The case is before the court on defendant's motion for summary judgment (Doc. 16). For the reasons set forth below, the motion is granted.

### I. Factual Background

The following facts are either uncontroverted and established by the parties in accordance with D.Kan. Rule 56.1, or are based on evidence viewed in the most favorable light to the non-moving party.

Plaintiff Steven South worked as a driver/service technician at defendant NMC Health Care, Inc., from January 1985 until he was discharged on June 22, 1994. Plaintiff's duties encompassed delivering oxygen and nitrous oxide cylinders (weighing 150–200 pounds) to commercial and industrial accounts, setting up durable medical equipment, and demonstrating to customers how to use their oxygen and medical equipment. Defendant required plaintiff, as part of his duties, to maintain a professional appearance and keep his company vehicle clean.

Plaintiff developed an asthmatic condition in 1987. Although the condition has diminished since having his abdominal tumor removed in an April 1992 surgery, plaintiff still suffers from some restricted breathing. To control the symptoms, plaintiff utilizes an Albuterol inhaler. Plaintiff's condition never prevented him from completing any job responsibilities while in defendant's employ, but did "cause him trouble" performing such tasks as jumping off loading docks, delivering heavy equipment and climbing stairs.

Since his April 1992 surgical procedure, plaintiff has gained significant weight, aggravating his asthma and causing the area around his surgical scar to cramp. His asthma and cramping, however, have never prevented him from engaging in such activities as walking or lifting. Plaintiff continues, in fact, to exercise as intently as he can to maintain his current weight. Moreover, the adhesions along his surgical scar, although creating some discomfort, did not inhibit plaintiff from performing his duties as a driver/service technician.

Plaintiff's colleagues at NMC Homecare frequently insulted his obesity and disheveled personal appearance. At some point between April 1992 and June 1994, plaintiff's supervisor, Gary Hamilton, told plaintiff that he "can't be getting sick" because the illnesses could raise defendant's insurance premiums.

In the days just prior to his termination, plaintiff entered the hospital suffering from acute heat exhaustion. Upon his release, plaintiff requested time off, claiming that his doctor believed that an abdominal tumor may

---

**1.** In his original complaint, plaintiff also brought state law claims against defendant for intentional and negligent infliction of emotional distress. Plaintiff expressly abandons the claims in his response to defendant's motion. Accordingly, the court grants summary judgment to defendant on those claims.

have reappeared. Subsequent diagnostic tests indicated that plaintiff's doctor's suspicions were unfounded.

Plaintiff received numerous criticisms on his work performance during his tenure at NMC Homecare. Defendant, for example, issued at least four reprimands to plaintiff regarding his failure to maintain a professional appearance while on the job. Each time, defendant's representatives explicitly informed plaintiff that continued noncompliance could lead to his discharge. Plaintiff maintains that the nature of his job, i.e., delivering large bulky objects, make it extraordinarily difficult for him to stay clean all day.

Defendant also cited plaintiff on multiple occasions for not keeping his company truck clean. The citations involved the "filthy interior" of the vehicle. Plaintiff's deficiencies in this area were particularly troublesome because of the high priority that the Joint Commission on Accreditation of Health Organizers ("JCAHO") places upon proper equipment maintenance. If defendant fails to meet JCAHO guidelines, it could lose its accreditation, causing a significant reduction in business.

Plaintiff acknowledges the importance of complying with JCAHO requirements and concedes that his failure to adhere to the standards constituted proper grounds for discharge. He maintains, however, that he was unable to meet JCAHO guidelines primarily because of the nature of his shift. Working as late as 10:00 p.m., he often was so exhausted at the end of the evening, that he did not take the time or effort to clean, wash or otherwise maintain his vehicle until the following morning. Defendant generally inspected its company fleet early in the morning, before plaintiff had serviced his truck.

On June 14, 1994, during defendant's accreditation review, a JCAHO inspector examined plaintiff's truck and found several violations, all of which tended to frustrate defendant's primary business objective of delivering medical supplies in a sanitary condition. (Def's.Mot.Summ.J., Ex. S). Although the JCAHO cited infractions in other areas of defendant's operations, plaintiff's deficiencies contributed to the issuance of a Type I recommendation, requiring a focused survey of the condition of defendant's vehicles. Within days after receiving the JCAHO's negative report, defendant fired plaintiff. When informing plaintiff that he had been discharged, defendant merely stated that the parties were "headed in different directions."

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

The ADA provides that "[n]o covered entity shall discriminate against a qualified in-

dividual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees; employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

■ Plaintiff offers no direct evidence showing that defendant terminated him on the basis of a disability, relying instead on circumstantial evidence to prove defendant's discriminatory intent. To "sharpen the inquiry into the elusive factual question of intentional discrimination" under the ADA, the Tenth Circuit has adopted the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *White v. York Int'l Corp.,* 45 F.3d 357, 361 n. 6 (10th Cir.1995) (citation omitted). Under this framework, plaintiff must first establish a *prima facie* case by demonstrating that: (1) he is a "disabled" person within the meaning of the ADA; (2) he is "qualified," that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) the employer terminated him because of his disability.[2] *White,* 45 F.3d at 360–61.

### A. Disability

Plaintiff claims to be "disabled" on the basis of three impairments: an abdominal tumor, internal adhesions along a surgical scar, and asthma. Defendant maintains that none of these impairments rise to the level of a "disability" within the meaning of the ADA.

The ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Although the ADA does not define "major life activities," the court is guided by the EEOC regulations issued to implement the statute. *Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The

regulations state that "[m]ajor life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1995).

■ An individual's impairment constitutes a "disability" under the ADA only if it "substantially limits" a major life activity. An impairment is substantially limiting if it significantly restricts the "condition, manner, or duration under which an individual can perform a particular major life activity as compared to ... the average person in the general population's ability to perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii) (1995). Three factors must be considered in determining whether such a "substantial limitation" is present: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of or resulting from the impairment. *Bolton,* 36 F.3d at 943 (citing 29 C.F.R. § 1630.2(j)(2)).

#### 1. Abdominal Tumor

■ Defendant disputes plaintiff's claim that the abdominal tumor, which plaintiff had removed in an April 1992 surgery and erroneously believed had reappeared in June 1994, constitutes a disability. Plaintiff alleges that, although his tumor has never returned, defendant "regarded him" as having a disability after learning of plaintiff's doctor's suspicions that the tumor may have reappeared.

There are three ways in which an individual can demonstrate that he is "regarded as" having a disability:

(1) the individual may have an impairment that is not substantially limiting but is perceived by the employer ... as constituting a substantially limiting impairment;

(2) the individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or

---

**2.** Because both the ADA and KAAD define the term "disability" similarly, plaintiff's discrimination claims under the two statutes must meet the

identical fate. *Nolan v. Sunshine Biscuits, Inc.,* 917 F.Supp. 753, 757 n. 2 (D.Kan.1996).

(3) the individual may have no impairment but is regarded by the employer ... as having a substantially limiting impairment.

29 C.F.R. pt. 1630, App. § 1630.2(*l*) (1995). Plaintiff seeks to invoke the first and third prongs of this regulatory test. An inherent requirement of these two provisions is that "plaintiff must show that the perceived impairment is a substantial limitation on a major life activity." *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).

To support his allegation, plaintiff offers his own statement to defendant, in a telephone call the weekend before his discharge, that his doctor thought an abdominal tumor may have reappeared. Although the doctor's fears later turned out to be unfounded, plaintiff insists that the conversation constitutes sufficient evidence for a jury to find that defendant regarded him as having a disability. Plaintiff provides no evidence, however, addressing the issue of how such a tumor would substantially limit any of his major life activities. The mere fact that plaintiff expressed his suspicions about the tumor to his employer does not satisfy the threshold requirement that the employer "regarded" the tumor as substantially limiting plaintiff's life activities. *Id.*

■ The only evidence plaintiff advances even tangentially related to defendant's attitude toward the perceived tumor suggests that defendant feared the necessary diagnostic tests might raise the company's insurance premiums. Nothing in the record, however, indicates that defendant considered the impairment as substantially limiting any of plaintiff's major life activities. Discharging an employee merely because his physical infirmities (which do not amount to "disabilities") impact company insurance premiums, although perhaps giving rise to state common law claims, does not implicate the ADA. The court, therefore, concludes that plaintiff's allegedly perceived tumor does not amount to a disability within the meaning of the ADA.

*3.* In his affidavit, plaintiff articulates a litany of substantial limitations generated by his surgical scar. The court finds, however, that plaintiff's affidavit is inconsistent with his prior deposition. Accordingly, the court will disregard the affidavit

## 2. Adhesions Along Surgical Scar

■ Defendant further argues that the adhesions along plaintiff's surgical scar do not constitute a disability under the ADA. The court agrees.

■ In his deposition, plaintiff testified that his surgical scar never inhibited his work performance. He stated that the cramping around the scar and associated weight gain impaired him only in that he experienced some pain and discomfort when bending over and lifting objects at work. Although lifting is a major life activity, *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1172 (10th Cir.1996), plaintiff's lifting "impairment" is not a substantial limitation on that activity. The oxygen tanks and hospital beds which plaintiff lifted as part of his job weigh hundreds of pounds. The average person in the general population unequivocally would experience discomfort when lifting such objects. While plaintiff's pain may have been aggravated by his scar, the record before the court does not raise a genuine issue that plaintiff's ability to lift was "substantially limited" as is required by the ADA.[3] Accordingly, the court finds that the adhesions along plaintiff's surgical scar do not constitute a disability.

## 3. Asthma

Defendant claims that while plaintiff's asthmatic condition may, on occasion, restrict his breathing, the impairment does not rise to the level of a "disability" under the ADA.

■ The court agrees with defendant that plaintiff's frequent workouts do cast doubt on the severity of his breathing impairment. Although plaintiff contends that heightened exertion "sets off" his asthma, he testified that he regularly exercises and goes to the gym to use a treadmill. These activities appear to be inconsistent with one whose breathing is as substantially impaired as plaintiff contends his to be. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d

on this issue. *See Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1463 (10th Cir.1996) (holding that plaintiff's affidavit, submitted at summary judgment stage and contradicting earlier deposition testimony, should not be considered).

Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995) (holding that participation in recreational activities such as exercise tends to undermine a finding of "disability" based on diminished breathing capacity).

It is unknown, however, how intensely plaintiff exercises or how frequently he incurs asthmatic attacks.[4] It is equally unclear how much exertion is necessary to trigger an attack. Accordingly, the court will assume, without deciding, that plaintiff's asthmatic condition constitutes a disability.

### B. "Otherwise Qualified"

■ Proceeding under the assumption that plaintiff's asthmatic condition does constitute a disability, the court now must determine whether plaintiff was qualified to perform the essential functions of his job. The Tenth Circuit utilizes a two-part test in assessing whether a disabled person is qualified within the meaning of the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e. functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*White,* 45 F.3d at 361–62 (citation omitted). Plaintiff has satisfied the ADA's "otherwise qualified" requirement. It is undisputed that, during his tenure with defendant, plaintiff could perform all essential functions of his job. Although plaintiff testified that his asthma and surgical scar occasionally made his job more difficult, he explicitly stated that these physical impairments never prevented him from completing any job tasks. No analysis of possible accommodations, therefore, may be undertaken.

### C. Basis For Termination

■ The final element that plaintiff must establish in order to make a *prima facie* case under the ADA is that defendant discharged him on the basis of his asthmatic disability. An "otherwise qualified disabled" individual satisfies this requirement by showing that he has been fired "under circumstances which give rise to an inference that his termination was based solely on his disability." *White,* 45 F.3d at 361 n. 6 (citing *Pushkin v. Regents of Univ. of Colo.,* 658 F.2d 1372, 1387 (10th Cir.1981)).

■ Plaintiff contends that he has raised an inference of discrimination based on (1) defendant's decision to discharge him within days after he told Gary Hamilton that the abdominal tumor may have reappeared; and (2) Gary Hamilton's isolated comment, made at some point between plaintiff's April 1992 surgery and his June 1994 termination, suggesting that defendant's insurance premiums could rise as a result of plaintiff's illnesses. Both arguments fail. As discussed earlier, plaintiff's perceived tumor does not satisfy the ADA's disability requirements. Moreover, there is no nexus between plaintiff's only cognizable disability—an asthmatic condition—and these alleged discriminatory inferences.

■ Even assuming that plaintiff could raise the requisite inference of discrimination, thereby establishing his *prima facie* case, his claims still fail under the latter stages of the *McDonnell Douglas* inquiry. Once an individual satisfies the ADA's *prima facie* elements of disability discrimination, the burden of production shifts to the employer to articulate a facially nondiscriminatory reason for its employment decision. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Defendant has met this burden. Defendant insists that it discharged plaintiff for his failure to maintain a professional appearance as well as his failure to keep the interior of his company vehicle clean. Over the course of multiple counseling sessions, annual performance evaluations,

---

**4.** Defendant contends that because plaintiff is able to manage his asthma with an Albuterol inhaler, plaintiff has no disability. This argument is without merit. The determination of whether an individual is substantially limited in a major life activity must be made "without regard to mitigating measures such as medicines." 29 C.F.R. pt. 1630, App. § 1630.2(j).

and written warnings, defendant explained to plaintiff that his unkempt appearance cast an unfavorable impression of the company to both customers and fellow employees. Defendant further advised plaintiff that the condition of plaintiff's truck jeopardized defendant's accreditation from the JCAHO, thereby creating the potential for significant loss of revenue. When discussing these issues with plaintiff, defendant expressly stated that continued noncompliance would lead to discharge. Defendant argues that it fired plaintiff only after the JCAHO's June 1994 inspection highlighted multiple deficiencies with defendant's equipment maintenance operations, the majority of which centered around the condition of plaintiff's vehicle.

 Plaintiff concedes that the criticisms he received with respect to his personal appearance and vehicle maintenance constitute proper grounds for termination. He alleges, however, that defendant's proffered explanations are merely pretext for discriminatory intent. Defendant having offered a legitimate nondiscriminatory reason for its actions, plaintiff may avoid summary judgment only by producing specific evidence that demonstrates a genuine issue of fact as to the alleged pretext. *Randle,* 69 F.3d at 451. Pretext may be established by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

Plaintiff's pretext allegations can be categorized into three arguments: (1) the negative JCAHO report was not the true reason for plaintiff's discharge; (2) plaintiff's supervisor, Gary Hamilton, frequently made pejorative remarks regarding plaintiff's health and general appearance; and (3) plaintiff was not told, at the time of his termination, the reasons for his discharge. The court will address each argument in turn.

 Plaintiff first maintains that the negative JCAHO report was not the true reason for his discharge because, although the report outlined several problems in defendant's operations, no employee other than plaintiff was informed of his specific deficiencies.

Plaintiff offers no proof to support this allegation. Even if defendant did choose not to notify or sanction other employees whose work was criticized in the report, however, no pretext has been established. Indeed, it appears that the most egregious violations with defendant's equipment maintenance operations revolved around plaintiff's vehicle. (Def's.Mot.Summ.J., Ex. S). The fact that plaintiff had been warned consistently that a failure to correct these problems would lead to his termination belies his claims of pretext.

Plaintiff also claims that he had no control over the deficiencies cited in the JCAHO report because of his "wretched old vehicle." The record suggests otherwise. Although plaintiff's truck did not have all the amenities of other vehicles in defendant's fleet, most of the violations reported by the JCAHO had no relationship to the model or make of vehicle. The violations focused largely on the disorganization and filth of items *inside* plaintiff's truck. The age of plaintiff's vehicle is, therefore, irrelevant.

 Next, plaintiff avers that Gary Hamilton's comments regarding plaintiff's health and general appearance demonstrate pretext. The court disagrees. Hamilton's comment that defendant's insurance premiums will rise if plaintiff gets sick has no relationship to plaintiff's asthmatic condition. Plaintiff's deposition indicates that Hamilton made this statement in reference to plaintiff's tumor which, as the court previously discussed, does not constitute a disability. The bulk of the remaining criticisms that Hamilton allegedly levelled relate to plaintiff's weight and cleanliness. While such remarks may be terribly insensitive, they do not strike at plaintiff's asthmatic condition or any other disability within the meaning of the ADA.

 Finally, plaintiff insists that defendant's refusal to provide specific reasons for plaintiff's discharge infers pretext. Defendant is under no obligation, however, to explain its employment actions to discharged employees at the moment of termination. Moreover, plaintiff had more than adequate notice that his persistent deficiencies could

lead to his discharge. When the JCAHO strongly criticized the condition of plaintiff's vehicle as part of its review of defendant's operations, defendant fired plaintiff within days. The court finds that no reasonable juror could infer pretext from defendant's actions.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 16) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**