Joseph A. MONDZELEWSKI, and
Rebecca Mondzelewski,
Plaintiffs,

v.

PATHMARK STORES, INC. and
Supermarkets General Corp.,
Defendants.

Civil Action No. 96–359 MMS.

United States District Court,
D. Delaware.

Argued July 31, 1997.

Decided Aug. 13, 1997.

Gary W. Abet, Heiman, Aber and Goldlust, Wilmington, DE, for plaintiffs.

Kerry Doyle–Shannon, White and Williams, Wilmington, DE, for defendants; Deborah Rodman Sandier, Laura W. Brewer, White and Williams, Philadelphia, PA, of counsel.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### Introduction

Joseph Mondzelewski ("Mondzelewski") filed a complaint against Pathmark Stores, Inc. and Supermarkets General Corp. (collectively "Pathmark" or "defendants") alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.*, and violation of Del.Code Ann. tit. 19, § 2365. His wife, Rebecca Mondzelewski, filed a claim for loss of consortium.[1] Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343 and 1367. Before the Court is Pathmark's mo-

---

1. The Mondzelewskis agreed to dismiss Counts IV and V of their complaint, which had alleged intentional infliction of emotional distress and prima facie tort. *See* Docket Item ("D.I.") 10.

tion for summary judgment. For the reasons that follow, the motion will be granted.

## Facts

Mondzelewski, who is 55 years old, has worked for Pathmark for 35 years—his entire working life. Appendix ("A")143. He currently works as a meat cutter. A19. Mondzelewski suffered two back injuries, both allegedly at work. A142. The first took place in March 1992, and the second in December 1993. A11. As a result, his doctor prohibited him from lifting objects weighing more than 50 pounds and carrying objects weighing more than 25 pounds. A23; A142. Mondzelewski notified Pathmark of these restrictions. A50.

On March 3, 1994, Mondzelewski, having learned Pathmark never filed with the Industrial Accident Board for either of his accidents, notified Pathmark of his intent to do so. A52. On that same date he filed a petition for workers' compensation with the Industrial Accident Board. Al 15–118.

In April 1994, Mondzelewski asked a co-worker to assist him in moving a large slab of meat; the weight of the meat was unknown, but Mondzelewski believed it might be too heavy for him to lift alone. A28–34. When the co-worker refused, Mondzelewski asked Pathmark Assistant Manager Leo Johnson to intercede. *Id.* Johnson responded by berating Mondzelewski, stating: "You want to play these f games, well I'm not. You want a write up, you'll get a write up." A33. Mondzelewski received a written "counseling" and was suspended for three hours for refusing to move the meat. *Id.* A grievance meeting subsequently was held to discuss the incident, in which Pathmark store manager Wayne Ostafy told Mondzelewski his restrictions were disrupting the work of his co-workers. A36–37; A60.

According to Mondzelewski, Pathmark managers and employees subsequently ridiculed and harassed him because of his disability. A39–40. He states Pathmark assigned him to "hardship" shifts and disciplined him more harshly than other similarly situated employees. A103–104. He suffered emotional trauma as a result, causing him to miss work from August 8, 1994, until November 14, 1994, when he returned to work for four-hour days; he ultimately was able to return to work full time.[2] *Id.* However, he continues to require medication and psychiatric assistance to cope with mental distress resulting from the harassment at work. A148. Mondzelewski's wife claims the trauma he suffered caused injury to their marital relationship and caused her to be deprived of his care, comfort and society. D.I. 1, at ¶¶ 57, 58.

In April 1995, Mondzelewski formally requested and was granted an accommodation by Pathmark to be assisted when lifting over 50 pounds and carrying over 25 pounds. D.I. 69, at Exhibit ("Exh.") E, F. In addition, Mondzelewski was transferred to another Pathmark store, apparently to relieve the harassment. A20. Mondzelewski continues to work at Pathmark, and at oral argument on Pathmark's motion, it was conceded by Mondzelewski that Pathmark currently is accommodating him in every respect, and the harassment has all but ceased.

## Discussion

### I. Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. Civ. P. 56(c). "In order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Olson v. General Elec. Astrospace*, 101 F.3d 947 (3d Cir.1996). "In reviewing the record, the court must give the nonmoving party the benefit of all reasonable

---

**2.** During this period, Mondzelewski filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"); he was subsequently issued a Notice of Right to Sue on April 2, 1996. *See* D.I. 1, Exhs. A, B.

inferences." *Bray v. Marriott Hotels,* 110 F.3d 986, 989 (3d Cir.1997).

Pathmark seeks summary judgment on each of Mondzelewski's claims. Its arguments will be considered individually below.[3]

## II. ADA Claims

The ADA prohibits discrimination against "qualified individual[s] with a disability." 42 U.S.C. § 12112(a). Disability, in turn, is defined in three distinct ways:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

*Id.* § 12102(2). Mondzelewski claims he falls within the first and third definitions above. In other words, he claims he had an impairment that substantially limited one or more of his major life activities, and/or he was regarded by Pathmark as having such an impairment.

### A. Physical Impairment that Substantially Limits One or More Major Life Activities.

There is no dispute Mondzelewski's back injury is a physical impairment. The parties disagree, however, on whether the injury substantially limits one or more of his major life activities. "Major life activities" are defined in EEOC regulations as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The EEOC also has issued Interpretive Guidelines to the ADA, which state "[O]ther major life activities include, but are not limited to, sitting, standing, lifting and reaching." 29 C.F.R. Pt. 1630, App. § 1630.2(i). Using

these definitions, Mondzelewski argues he is substantially limited in the major life activities of lifting and working.

### 1. Major Life Activity of Lifting

■ As explained above, not all impairments are disabilities under the ADA; only those that "substantially" limit major life activities are covered. The regulations indicate "substantially limits" means either the individual is *unable* to perform a major life activity, or, the individual is *"[s]ignificantly restricted as to the condition, manner or duration"* under which he can perform the major life activity, when compared to the abilities of the average person in the general population. 29 C.F.R. § 1630.2(j)(1); *see also id.* § 1630.2(j)(2); 29 C.F.R. Pt. 1630, App. § 1630.2(j).

The EEOC regulations reflect the principle that the special protections of the ADA only be afforded to those individuals who have impairments that are severe when compared with the those of the general population. This principle has been relied upon and articulated by the courts as well. *See Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir.1996) (plaintiff who walked slowly and used a handrail when climbing stairs is not substantially limited in the major life activity of walking); *see also Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986) ("It would debase th[e] high purpose [of the disability discrimination statutes] if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared.").

There appears to be disagreement among the courts as to what type of lifting restrictions constitute substantial limitations on major life activities. *See Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346 (4th Cir.1996) ("[W]e hold, as a matter of law, that a twenty-five pound lifting limitation—

---

**3.** Pathmark asserts in a footnote of its summary judgment brief that Mondzelewski's ADA claims must be dismissed because he failed to pursue a grievance or arbitration under his union contract. *See* D.I. 69, at 13 n. 8 (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). However, Pathmark has failed to put the union contract in

the record on summary judgment, therefore, it is impossible for the Court to determine whether Mondzelewski's claim is truly barred under *Gilmer.* At oral argument on its motion, Pathmark indicated it did not wish to pursue this argument. Accordingly, Pathmark's motion for summary judgment on this issue will be denied.

particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity."), *cert. denied*, —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311 (8th Cir.1996) (same); *Ray v. Glidden Co.*, 85 F.3d 227 (5th Cir.1996) (same); *but see Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir.1996) (holding issue of fact exists as to disability of a woman with multiple sclerosis who could not lift more than 15 pounds, and should not often lift less than that, and who also faced limitations on her stooping and bending); *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092 (S.D.Ga.1995) (same, where plaintiff was limited to lifting 10–15 pounds, could only stand for 30 minutes and walk for 3 minutes); *Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528 (N.D.Ala.1995) (accepting plaintiff's statement that he was limited in the major life activities of lifting, where he could not lift more than 5 pounds without pain).[4]

The lack of uniformity notwithstanding, it is possible to discern from these cases that the uncertainty relates to lifting restrictions that are less than 25 pounds. The courts seem to agree lifting restrictions of 25 pounds or more are not significant. The cases cited by the plaintiff do not hold otherwise, they all concern lifting restrictions of less than 25 pounds; in *Cheatwood*, for example, the plaintiff could not lift 5 pounds without pain. 891 F.Supp. at 1534.

As Mondzelewski was restricted from *lifting* 50 pounds or more, and *carrying* 25 pounds or more, his case clearly falls on the side of an insubstantial lifting restriction when compared with the general population. Accordingly, Pathmark is entitled to summary judgment on the issue whether Mond-

zelewski is substantially limited in the major life activity of lifting.

## 2. Major Life Activity of Working

Mondzelewski also states he is substantially limited in the major life activity of working. In order to prove this element of his claim, Mondzelewski must demonstrate he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). The burden on him is not "onerous"; he merely must present some evidence as to the type of jobs he is excluded from because of his back injury. 29 C.F.R. Pt. 1630, App. § 1630.2(j).

With respect to the major life activity of working, the EEOC Interpretive Guidelines provide this additional example, "[A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs." *Id.*

As evidence he is substantially limited in the major life activity of working, Mondzelewski has commissioned a study by Thomas Yohe, a vocational expert. A141–A146. Yohe opined Mondzelewski, who has only a fifth or sixth grade education, will have "significant employability problems" should his employment at Pathmark come to an end; this conclusion is based in part on the results of a test of Mondzelewski's academic achievement which revealed "extremely low" scores. A144; A146.[5] Yohe also characterized Mondzelewski's physical limitations as "medium-duty restrictions." A142. Yohe concluded, because of Mondzelewski's

---

4. Mondzelewski also cites *South v. NMC Homecare, Inc.*, 943 F.Supp. 1336 (D.Kan.1996), in support of his position. However, that case merely recognized lifting as a major life activity under the ADA. The Court does not disagree; however, it notes the court ultimately held the plaintiff was not substantially limited in the major life activity of lifting, in spite of his complaint of discomfort when lifting items weighing approximately 100 pounds. 943 F.Supp. at 1341.

5. Mondzelewski scored in the 37th percentile in reading, the second percentile in spelling and 9th percentile in arithmetic. A144. He also scored in the first through 10th percentiles in mechanical reasoning, verbal reasoning, numerical aptitude, language usage, perceptual speed, and accuracy and manual speed and dexterity. *Id.*

limited education, his age and background, combined with his limitations, for all practical purposes the best that could be hoped for him would be menial jobs that would pay in the minimum wage range or slightly above.... With his limited education and narrow work range, he would be severely handicapped in the workforce given these circumstances.

A146.

Yohe's report fails to raise a material issue of fact on Mondzelewski's claim for several reasons. First, it fails to relate the effect of Mondzelewski's "medium-duty restrictions" on his ability to perform jobs in the economy, nor does it quantify the number or type of jobs he is precluded from performing due to those restrictions. While, as noted above, the EEOC Interpretive Guidelines instruct that one with a back condition that prevents him from performing "any heavy labor job" is substantially limited in the major life activity of working, 29 C.F.R. Pt. 1630, App. § 1630.2(j), this Court is not versed in the particularities of "medium-duty restrictions" and their relationship to "heavy labor jobs."

More importantly, the inescapable implications of Yohe's report, as quoted above, is that while Mondzelewski's employability problems stem from a combination of factors—limited education, limited job skills, advanced age, and lifting restrictions— the first three of these factors dwarf the last one in effect on employability. One reading Yohe's report just could not reach the conclusion his back injury causes his employability problems.

To be certain, the EEOC regulations do instruct the Court to compare Mondzelewski's job prospects with others of "comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). However, the EEOC Interpretive Guidelines also warn:

It is important to remember that the restriction on the performance of the major life activity must be the result of a condition that is an impairment. As noted earlier, advanced age, physical or personality characteristics, and environmental, cultural and economic disadvantages are not impairments. Consequently, even if such factors substantially limit an individual's ability to perform a major life activity, this limitation will not constitute a disability.

29 C.F.R. Pt. 1630, App. § 1630.2(j).

Mondzelewski's claim cannot survive this last admonition. To hold Mondzelewski is substantially limited in the major life activity of work would permit him to gain protection from the ADA for personal characteristics that have nothing to do with his impairment. Accordingly, the Court holds Mondzelewski's impairment does not create a significant limitation on his major life activity of working, and summary judgment will be granted for Pathmark on this issue.[6]

### B. Regarded as Having a Substantially Limiting Impairment

■ Mondzelewski alternatively argues he was regarded as having a substantially limiting impairment. Essentially, Mondzelewski argues Pathmark regarded him as having a disability because it "refused to grant him permanent light duty work without applying to its ADA Committee." D.I. 75, at 15. This argument is meritless. The fact that Pathmark referred Mondzelewski's request for accommodation to its ADA committee demonstrates only that Pathmark opted to have all requests for accommodation decided by committee rather than on a more decentralized basis. The referral, in and of itself, certainly does not demonstrate Pathmark perceived Mondzelewski as being disabled. Pathmark's motion for summary judgment on this issue will be granted.[7]

6. Although the Court does not specifically adopt this, it found useful Pathmark's suggestion that the Court compare Mondzelewski's job prospects before his injury with those afterwards, to determine the significance of his physical impairment on his ability to perform jobs. The analysis demonstrates Mondzelewski's ability to perform a wide range of jobs is most hampered by his lack

of education and skills, as opposed to his impairment.

7. Mondzelewski also seems to argue he had a record of disability based on his back limitations. The Court rejects this argument. To establish a record of disability, Mondzelewski must prove he had a history of a physical impairment that substantially limited one or more major life activi-

### C. Retaliation for Asserting Rights under ADA

■ Mondzelewski next asserts a claim of retaliation in violation of 42 U.S.C. § 12203; Pathmark argues it must be dismissed based on failure to exhaust administrative remedies. The Court does not reach this issue because of its holding, above, that Mondzelewski is not disabled under the ADA. The Court further holds, under the facts of this case, Mondzelewski may not assert a claim for retaliation because he is not disabled.

In reaching this conclusion, the Court has carefully considered the acts of harassment alleged by Mondzelewski to constitute retaliation. They are:

- assignment to "punishment shifts" from 9:00 a.m. to 5:00 p.m. A103–104.
- singling him out for discipline where other employees were not disciplined. A59.
- denying him a butcher's "white coat" for the reason he would not be employed by Pathmark much longer. A39.
- denying him time off for doctor's appointments. A64–65.
- one Pathmark manager gave the plaintiff and his wife "the finger" while they were shopping at Pathmark. A63; 73.

Section 12203(a) states:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

First, it is far from clear that Mondzelewski's allegations state a claim for relief under the language of section 12203—which is triggered by the filing of a charge or participation in a proceeding—as all the conduct of which he complains occurred *before* he filed his charge with the DDOL/EEOC. It is asserted, however, that the harassment was in retaliation for Mondzelewski's request for accommodation. That argument was accepted by the First Circuit Court of Appeals in

*Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12 (1st Cir.1997).

In *Soileau*, the plaintiff Soileau was fired from his job and brought disability discrimination claims against his employer based on a depressive disorder. The defendant company asserted it terminated him for poor job performance. The court first found Soileau was not disabled, as he was not substantially limited in any major life activities. It then considered his retaliation argument, for, although Soileau had not filed a charge of discrimination before his termination, he had requested accommodation. Recognizing the claim did not fall under the literal wording of the statute, the Court stated:

It would seem anomalous ... to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge. This would leave employees unprotected if an employer granted the accommodation and shortly thereafter terminated the employee in retaliation. And so, without addressing the issue any further, we will assume arguendo that [the plaintiff's] request brings him within the coverage of 42 U.S.C. § 12203(a).

*Id.* at 16. The Court ultimately held the plaintiff failed to raise a material issue of fact with respect to retaliation, and it granted summary judgment for the defendant.

Mondzelewski relies heavily on *Soileau* as support for his argument Pathmark's motion for summary judgment should be denied. First, he asserts, *Soileau* indicates he can make a claim for retaliation despite the fact the complained-of events occurred before he filed a charge; second, he cites it for the proposition that one who is not disabled under the ADA still may sue for retaliation. The Court will assume, without deciding, that Mondzelewski's first argument is valid—that a claim of retaliation can be brought based on a request for reasonable accommodation as opposed to a formal charge. However, the Court does not find that *Soileau* mandates that Mondzelewski can bring a claim for retaliation despite the holding he is not

ties. 29 C.F.R. § 1630.2(k). Earlier in this opinion, the Court held Mondzelewski's limitations did not substantially limit the major life activity

of lifting. Therefore, Mondzelewski does not have a history of a substantially limiting impairment.

disabled. The latter conclusion is based on an important difference between the present case and *Soileau:* The plaintiff in *Soileau* was terminated from his position, while Mondzelewski has for the most part been accommodated, and his claims are based solely on harassment.[8]

Pathmark touched upon this difference when it argued Mondzelewski was not subject to any adverse employment action—it cited *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1083 (3d Cir.1992), for the proposition that the employment laws do not provide redress "for every workplace grievance, real or imagined...." In *Gray,* a case brought under the Age Discrimination in Employment Act ("ADEA"), several employees of York Newspapers sued after new management took over and allegedly forced their constructive discharge. For example, Anita Gray claimed her editor began to frequently mention the idea of retirement, and soon thereafter, she was offered an early retirement package. Further, the company threatened to change her reporting assignment to one she found "demeaning," although the change never occurred. Gray subsequently accepted the early retirement package.

The Third Circuit Court of Appeals rejected Gray's discrimination claim on the basis that her decision to accept early retirement was voluntary. It stated, "We recognize that Gray probably did perceive that the new management was less affable than that to which she had been accustomed, and we may assume that she *subjectively* believed that continued employment would have been uncomfortable and that she would have been demoted or terminated at some point in the future." 957 F.2d at 1083. The court then quoted from the Fourth Circuit Court of Appeals:

[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure h[er] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by h[er] co-workers. [Sh]e is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

*Id.* (quoting *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985)).

The Third Circuit Court of Appeals recently echoed these sentiments in *Robinson v. City of Pittsburgh,* 120 F.3d 1286 (3d Cir. 1997), in which the court affirmed summary judgment for the defendant on a claim of retaliation in violation of Title VII. The court stated:

Retaliatory conduct other than discharge or refusal to rehire is thus proscribed by Title VII only if it alters the employee's "compensation, terms, conditions, or privileges of employment," deprives him or her of "employment opportunities," or "adversely affect[s] his [or her] status as an employee." It follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "[o]therwise, minor, and even trivial employment actions that an 'irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"

120 F.3d at 1300 (citations omitted).

Despite such precedent, the Court does not hold that the acts alleged by Mondzelewski do not, as a matter of law, constitute

**8.** Mondzelewski made several different permutations of this argument, one argument seemed to be that he was subject to a hostile work environment. That claim would fail, too, on the basis Mondzelewski was not a member of the protected class since he has been found not to be disabled.

This Court believes Mondzelewski's claim is best characterized as a failure to reasonably ac-

commodate; in other words, if an employer physically accommodates a disabled employee but then harasses that employee, it seems questionable that would qualify as a "reasonable accommodation." However, such a claim also would necessarily be predicated on a finding of disability, which is not present here.

**284**

adverse employment action, although it does not believe it would be error to do so. For example, Mondzelewski's most tangible complaint—the change in shifts—must be discounted because of the common sense notion that a 9:00 a.m. to 5:00 p.m. shift cannot be considered an extreme hardship given most of this country's workers are governed by that shift. While the other acts of harassment are offensive and objectionable, they just do not rise to the level of "adverse employment action"—they do not affect Mondzelewski's compensation, terms, conditions, or privileges of employment.

The Court holds instead that Mondzelewski—who is not disabled—cannot recover under the ADA for the particular acts of harassment he has alleged. To hold otherwise would be to expand the ADA's retaliation provision beyond recognition. The prohibition on retaliation—as with the whole of the ADA—affords protection to individuals who are "disabled" within the meaning of the statute. With respect to retaliation, an exception to that rule is that individuals who are not disabled but who in good faith file formal disability discrimination charges with the DDOL or EEOC also are covered. *See Soileau,* 105 F.3d at 16. However, individuals who are not disabled cannot claim the protections of the ADA for the more trivial acts of harassment that may be visited upon them in response to their requests for assistance. Such an interpretation would provide an extremely broad cause of action for an entire class of people outside the protected class of the ADA. While such harassment is certainly reprehensible, the ADA simply does not provide a remedy to redress it. Pathmark's motion for summary judgment will be granted.

### III. State Law Claims

In light of the fact that the Court will grant Pathmark's motion for summary judgment on all Mondzelewski's federal claims, it will decline to exercise supplemental jurisdiction over his remaining state law claims. 28 U.S.C. § 1367(c)(3); *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).