

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-1998

# Mondzelewski v. Pathmark

Precedential or Non-Precedential:

Docket 97-7475

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Mondzelewski v. Pathmark" (1998). *1998 Decisions.* Paper 284.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/284

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 23, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7475

JOSEPH A. MONDZELEWSKI,
REBECCA MONDZELEWSKI
Appellants

v.

PATHMARK STORES, INC.,
SUPERMARKETS GENERAL CORP.
Appellee

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(D.C. No. 96-cv-00359)
(District Judge: Honorable Murray M. Schwartz)

Argued: September 15, 1998

Before: SLOVITER, SCIRICA, and ALITO, Circuit Judges

(Opinion Filed: December 23, 1998)

GARY W. ABER (ARGUED)
Heiman, Aber & Goldlust
First Federal Plaza, Suite 600
702 King Street, P.O. Box 1675
Wilmington, DE 19899

Counsel for Appellants

C. GREGORY STEWART
PHILIP B. SKLOVER
LORRAINE C. DAVIS
ROBERT J. GREGORY
EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION
1801 L Street, N.W.
Washington, D.C. 20507

Counsel for Amicus-Appellant

DEBBIE RODMAN SANDLER
(ARGUED)
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19193-7395

Hal R. Crane, Of Counsel
Pathmark Stores
301 Blair Road
Woodbridge, NJ 07095-0915

Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

Joseph A. Mondzelewski ("Mondzelewski") and his wife, Rebecca Mondzelewski, sued Pathmark Stores, Inc., and Supermarkets General Corp. (collectively, "Pathmark"), asserting claims under the Americans with Disabilities Act of 1990, 42 U.S.C. S 12101 et seq. (the "ADA"), and Delaware law. The District Court granted summary judgment for Pathmark and declined to exercise supplemental jurisdiction on the state-law claims. On appeal, Mondzelewski argues that the District Court erred in holding that he is not disabled within the meaning of the ADA because he is not substantially limited in the major life activity of working. In addition, relying on Krouse v. American Sterilizer Co., 126 F.3d 494, 498 (3d Cir. 1997), which was handed down after the District Court ruled in this case, Mondzelewski contends that the District Court

2

erred in rejecting his retaliation claim on the ground that he is not disabled. We reverse the District Court on both grounds and remand for further proceedings in accordance with this opinion.

I.

A. Viewed in the light most favorable to Mondzelewski, the relevant facts are as follows. Mondzelewski, a 55-year old with a sixth-grade education, has worked at Pathmark for 35 years, first as a bagger and then as a meat cutter. In March 1992, he injured his back lifting boxes of meat and was treated by Dr. Henry, Pathmark's doctor, who diagnosed him as having a herniated vertebral disc. After Mondzelewski spent a short time on disability, Dr. Henry released him to work but restricted him from lifting objects weighing more than 50 pounds and from carrying objects weighing more than 25 pounds. Mondzelewski informed Pathmark of his lifting restrictions.

In December 1993, Mondzelewski re-injured his back while lifting boxes of meat. After a few additional months on disability, Mondzelewski was again released to work with the same lifting restrictions, and he again provided a copy of the restrictions to Pathmark.

Mondzelewski claims that, after returning to work from his second injury, Pathmark retaliated against him for asserting his right under the ADA to obtain reasonable accommodation for a disability. See 42 U.S.C. S 12112(b)(5)(A). Mondzelewski first maintains that Pathmark unlawfully changed his work schedule. In Pathmark's meat department, workers were generally given schedules that allowed them free time in either the mornings or the afternoons. Some workers began their shifts between 6 and 8 a.m. and finished by 2 p.m., while others began at noon and worked until evening. In addition, workers generally were not required to work in the evening on weekends on a regular basis. Before his second injury, Mondzelewski's schedule generally followed this pattern, but after his second injury, Pathmark assigned him to work from 9:30 a.m. to 6:00 p.m. and consistently required him to work on Saturday evenings. According to Mondzelewski

3

and his fellow workers, these shifts were considered "punishment shifts." App. 122–125.

Mondzelewski also contends that he was given several retaliatory reprimands. First, Mondzelewski stated in his deposition that he received an oral warning for taking his work break during the last hour of his shift and that no other employees were given such warnings. Second, Mondzelewski was given a written notice of counseling because he had "left ground beef in [the] case" instead of making "frozen patties" or "consult[ing] management for direction." App. 138. Mondzelewski described this notice as one for grinding up too much meat, and he asserted that it was not unusual for employees to grind up more meat than could be sold. App. 81–82. Although this notice stated that it was for "counseling only," it also stated that "future violations will result in additional disciplinary action including separation." App. 138. Mondzelewski claims that this was the first written reprimand he had ever received during his 35–year career at Pathmark.

Last, within a week of the earlier written notice, Mondzelewski received another written notice for "insubordination" for refusing to lift a piece of meat. The meat was unmarked as to its weight, but Mondzelewski estimated it to weigh between 50 and 100 pounds. Because his co-worker refused to assist in lifting the meat, Mondzelewski called on a department manager for help. Instead of offering assistance, Mondzelewski claims the department manager wrote specific weights on this and other pieces of meat without actually weighing them. The department manager then allegedly told Mondzelewski to lift the meat stating: "You want to play those[expletive] games, well, I'm not. You want a write up. I'm telling you to do these chucks. You either do it or you go home." App. 45. Mondzelewski refused, and as a result, he was written up and suspended for the afternoon. Like his previous written notice, this notice stated that "future violations will result in additional disciplinary action including separation." App. 139. At a grievance meeting to discuss the matter, Mondzelewski was told, he asserts, that his restrictions were disrupting the work of his fellow employees.

4

Mondzelewski asserts that on one occasion his supervisor refused to give him time off for a medical test and told him he would have to reschedule it. He also stated that on some occasions the department manager refused his request for help in lifting meat and said: "Things are not that heavy. You can pick that up." App. 48.

Finally, Mondzelewski claims that Pathmark's managers and employees harassed and humiliated him. Mondzelewski was sent to a worker's compensation seminar at which a speaker said that some employees fake accidents. On another occasion, he states, he was not given a"butcher's white coat" and was told it was because he would not be around much longer. At another time, he was allegedly told that Pathmark should release him and find him a job pumping gas. Moreover, he stated that he was told: "We don't need a meat cutter. We don't need a wrapper, and we don't need you." App. 83. Further, Mondzelewski asserts that a manager made a derogatory and offensive hand gesture to his wife and him.

Mondzelewski claims that Pathmark's conduct caused him to suffer a mental breakdown and to miss work for several months. During this period, he filed a charge against Pathmark with the Equal Employment Opportunity Commission ("EEOC"). Later that year, he returned to work, but he was assigned to a different store in order to prevent any further acts of retaliation. At present, Mondzelewski continues to work at Pathmark, and according to him, the harassment has ended. However, he states that he continues to require medication and psychological counseling.

B. Mondzelewski filed a six-count complaint in the United States District Court for the District of Delaware. Count I alleged that Pathmark discriminated against him, in violation of 42 U.S.C. S 12112, by failing to provide reasonable accommodation for his lifting restrictions. Count II claimed that Pathmark violated 42 U.S.C. S 12203 by retaliating against him for requesting a reasonable accommodation when he returned to work after his second injury. Count III asserted that Pathmark violated a Delaware statute, 19 Del. Code S 2365, by retaliating against him for filing a worker's compensation claim.

5

Counts IV and V alleged common law torts, and Count VI asserted injury to the Mondzelewskis' marital relationship.

The District Court granted summary judgment for Pathmark on the federal claims. See Mondzelewski v. Pathmark Stores, Inc., 976 F. Supp. 277 (D. Del. 1997). The Court first held (id. at 279-81) that Mondzelewski was not disabled under the ADA because his back injury did not "substantially limit[ ]" him in the "major life activities" of "lifting" or "working." See 42 U.S.C.S 12102(2)(A) (defining a "disability" as including "a physical . .. impairment that substantially limits one or more of the major life activities of such individual"). In an effort to show that he was substantially limited in the major life activity of working, Mondzelewski provided a report by Thomas Yohe, a vocational expert, which detailed Mondzelewski's job prospects. However, the District Court held that Yohe's report "fail[ed] to raise a material issue of fact on Mondzelewski's claim for several reasons," including its failure to "relate the effect of Mondzelewski's `medium-duty restrictions' on his ability to perform jobs in the economy" and its failure to "quantify the number or type of jobs he is precluded from performing due to those restrictions." Mondzelewski, 976 F. Supp. at 281. Most important, the Court stressed that Mondzelewski's "employability problems" were not caused by his impairment, but rather by his "personal characteristics [such as his limited education, training, and skills] that ha[d] nothing to do with his impairment." Id. Accordingly, the Court granted summary judgment for the defendants on Count I.

Turning to Mondzelewski's retaliation claim, the Court held that "Mondzelewski may not assert a claim for retaliation because he is not disabled." Mondzelewski, 976 F. Supp. at 282. The court went on to note precedent to the effect that a plaintiff in a Title VII retaliation case must show that he or she suffered what is often termed a materially "adverse employment action." See, e.g., Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (citing cases). The District Court then wrote:

> Despite such precedent, the Court does not hold that the acts alleged by Mondzelewski do not, as a matter of law, constitute adverse employment action, although it

6

does not believe it would be error to do so. For example, Mondzelewski's most tangible complaint-- the change in shifts -- must be discounted because of the common sense notion that a 9:00 a.m. to 5:00 p.m. shift cannot be considered an extreme hardship given most of this country's workers are governed by that shift.

Mondzelewski, 976 F. Supp. at 283-84. The Court thus granted summary judgment for the defendants on Mondzelewski's retaliation claim, and the court declined to exercise supplemental jurisdiction on the remaining state law claims. Mondzelewski then appealed.

In this appeal, we must decide (1) whether the District Court correctly concluded that Mondzelewski is not disabled within the meaning of the ADA and (2) whether a claim for retaliation can be asserted even if the underlying disability claim fails. In addition, since the District Court stated that it would not be error to hold that Mondzelewski had not suffered any "adverse employment action," we will address that question as well.

II.

We turn first to the District Court's conclusion that Mondzelewski is not disabled within the meaning of the ADA. Mondzelewski does not challenge the District Court's holding that he is not substantially limited in the major life activity of lifting, but he contends that the District Court erred in granting summary judgment against him on the question whether his back impairment, coupled with his limited education, training, and skills, substantially limits his ability to work. We agree.

A. The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the disability, 42 U.S.C. S 12101, and as noted, the term "disability" is defined to mean, among other things, "a physical . . . impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. S 12102(2)(A).1 Pathmark does not dispute that
_____

1. In the District Court, Mondzelewski also argued that he was disabled under 42 U.S.C. SS 12102(2)(B) and (C) because he has a record of an

7

Mondzelewski's back injury is a "physical impairment," but Pathmark argues that this impairment does not substantially limit any major life activity.

Although the ADA does not define the term "substantially limits," the EEOC regulations provide guidance. See 42 U.S.C. S 12116 (empowering the EEOC to promulgate regulations implementing the ADA); Deane v. Pocono Medical Ctr., 142 F.3d 138, 143 n.4 (3d Cir. 1998) (en banc) (regulations entitled to substantial deference). As provided by the regulations, the phrase "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. S 1630.2(j)(1)(i), (ii). The regulations further provide that, in assessing whether a major life activity has been substantially limited, a court should consider the following factors: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of [the impairment] or resulting from the impairment." 29 C.F.R. S 1630.2(j)(2)(i)-(iii).

According to the regulations, "working" is a "major life activity." 29 C.F.R. S 1630.2(i).2 The regulations state that an individual is substantially limited in the major life

_____

impairment that constitutes a disability and because Pathmark regarded him as having such an impairment. The District Court rejected these arguments and Mondzelewski has not raised them on appeal.

2. Major life activities also include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning . . . ." 29 C.F.R. S 1630.2(i). This list is not meant to be exhaustive, and also includes sitting, standing, lifting, and reaching. 29 C.F.R. Pt. 1630, App. S 1630.2(i). In the District Court, Mondzelewski argued that he is substantially limited in the major life activities of lifting and working. On appeal, Mondzelewski argues only that he is substantially limited in the major life activity of working.

activity of working if there is a significant restriction in the ability "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. S 1630.2(j)(3)(i). When analyzing whether there has been a substantial limitation on the major life activity of working, the regulations provide that the courts may also consider: (1) the geographical area to which the individual has reasonable access; (2) the job from which the individual has been disqualified, and the number and types of jobs utilizing similar training, knowledge, skills or abilities from which the individual is also disqualified ("class of jobs"); and/or (3) the job from which the individual has been disqualified, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities from which the individual is also disqualified ("broad range of jobs"). 29 C.F.R. S 1630.2(j)(3)(ii); see also Deane, 142 F.3d at 144 n.7.

On Pathmark's motion for summary judgment, the District Court held that Mondzelewski had not provided sufficient evidence to demonstrate that he is substantially limited in the major life activity of working. Mondzelewski, 976 F. Supp. at 281. The Court provided several reasons for its holding. We begin with the "most important" basis for the District Court's decision. See id.

B. The District Court concluded that, "while Mondzelewski's employability problems stem from a combination of factors -- limited education, limited job skills, advanced age, and lifting restrictions -- the first three of these factors dwarf the last one in effect on employability." Id. The Court stressed that "[t]o hold Mondzelewski is substantially limited in the major life activity of work would permit him to gain protection from the ADA for personal characteristics that have nothing to do with his impairment." Id. We conclude that the District Court's legal analysis was flawed because, as the ADA regulations explicitly provide, a court should consider the individual's "training, skills and abilities" in determining whether the individual is substantially limited in the major life activity of working. 29 C.F.R. S 1630.2(j)(3)(i).

9

Under the EEOC's interpretive guidelines,[3] determining whether an individual is substantially limited in one or more of the major life activities requires a two-step analysis. First, the court determines whether the individual is substantially limited in any major life activity other than working, such as walking, seeing, or hearing. 29 C.F.R. Pt. 1630, App. S 1630.2(j). In making this determination, the court compares the effect of the impairment on that individual as compared with the "average person in the general population." 29 C.F.R. S 1630.2(j)(1); 29 C.F.R. Pt. 1630, App. S 1630.2(j) (stating that the determination must be conducted on a case by case basis). For example, "an individual who had once been able to walk at an extraordinary speed would not be substantially limited in the major life activity of walking if, as a result of a physical impairment, he or she were only able to walk at an average speed, or even at a moderately below average speed." 29 C.F.R. Pt. 1630, App. S 1630.2(j). If the court finds that the individual is substantially limited in any of these major life activities, the inquiry ends there. Id. On the other hand, if the individual is not so limited, the court's next step is to determine whether the individual is substantially limited in the major life activity of working.[4] Id.

In determining whether an individual is substantially limited in the ability to work, the proper inquiry, according to the relevant regulation, is whether the individual is "significantly restricted in the ability to perform either a

_____

3. We have afforded these guidelines "a great deal of deference." Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 937 (3d Cir. 1997).

4. Specifically, the Interpretive Guidelines provide:

> If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working. For example, if the individual is blind, i.e., substantially limited in the major life activity of seeing, there is no need to determine whether the individual is also substantially limited in the major life activity of working.

29 C.F.R. Pt. 1630, App. S 1630.2(j).

10

class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. S 1630.2(j)(3)(i) (emphasis added). This approach requires a court to consider the individual's training, skills, and abilities in order to evaluate "whether the particular impairment constitutes for the particular person a significant barrier to employment." Webb v. Garelick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996) (citing Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986)); accord E.E. Black, Ltd. v. Marshall, 497 F. Supp. 1088, 1099 (D. Haw. 1980) (explaining that "it is the impaired individual that must be examined, and not just the impairment in the abstract"); 29 C.F.R. Pt. 1630, App. S 1630.2(j) (stating that the determination of whether an individual is limited in working must be conducted on a case by case basis). Because a "person's expertise, background, and job expectations are relevant factors in defining the class of jobs used to determine whether an individual is disabled," Webb, 94 F.3d at 487, the court must consider the effect of the impairment on the employment prospects of that individual with all of his or her relevant personal characteristics. Forrisi, 794 F.2d at 933. Thus, a substantially limiting impairment for one individual may not be substantially limiting for another individual with different characteristics. 29 C.F.R. Pt. 1630, App. S 1630.2(j); see also McKay v. Toyota Motor Mfg. U.S.A., Inc., 110 F.3d 369 (6th Cir. 1997) (finding plaintiff with carpal tunnel syndrome not disabled because, among other things, she had a college degree); Smith v. Kitterman, Inc., 897 F. Supp. 423, 427 (W.D. Mo. 1995) (finding plaintiff with carpal tunnel syndrome had raised material issue of fact because of her limited education, training, and employment background); Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 724 (2d Cir. 1994) (finding plaintiff not hindered in her ability to work because of her advanced educational degrees).

We accept this approach -- under which an individual's training, skills, and abilities are taken into account in determining whether the individual is substantially limited in the major life activity of working -- because we owe "substantial deference" to the EEOC regulation in which it is set out, see Deane, 142 F.3d at 143 n.4, and because it

11

is entirely reasonable. Indeed, because the effect that a particular impairment will have on a person's ability to work varies depending on that person's background and skills, it is not easy to envision how any other approach could be taken.

C. Under the approach set out above, the District Court in the present case was required to determine whether Mondzelewski's evidence was sufficient to show that his lifting restrictions significantly limit his ability to perform the requisite jobs "as compared to the average person having comparable training, skills and abilities." 29 C.F.R. S 1630.2(j)(3)(i). This determination necessitated consideration of the "personal characteristics" that the District Court's analysis factored out. Whether Mondzelewski's lifting restriction would not limit him in the major life activity of working if he possessed more or different training, skills, or abilities is not determinative; rather, the question is whether his ability to work is sufficiently limited in light of the training, skills, and abilities that he does possess.

In finding that Mondzelewski is not disabled, the District Court mistakenly relied on a provision in the EEOC guidelines that states:

> [T]he restriction on the performance of the major life activity must be the result of a condition that is an impairment. . . . [A]dvanced age, physical or personality characteristics, and environmental, cultural, and economic disadvantages are not impairments. Consequently, even if such factors substantially limit an individual's ability to perform a major life activity, this limitation will not constitute a disability.

29 C.F.R. Pt. 1630, App. S 1630.2(j). By its plain language, this provision relates to the question whether the individual has a physical or mental impairment, not whether the impairment substantially limits a major life activity and thus constitutes a disability. The guideline provides the following example:

> [A]n individual who is unable to read because he or she was never taught to read would not be an individual

12

with a disability because lack of education is not an
impairment.

Id. But if an individual who previously held a job that did
not require much if any reading developed a physical
impairment, that individual's ability to read would have to
be taken into account in determining whether he or she
was "significantly restricted in the ability to perform either
a class of jobs or a broad range of jobs in various classes
as compared to the average person having comparable
training, skills and abilities." 29 C.F.R. S 1630.2(j)(3)(i).

For these reasons, we hold that the District Court
committed legal error by failing to conduct the necessary
individualized assessment of the extent to which
Mondzelewski's back condition coupled with his personal
characteristics substantially limits his ability to work.

D. The District Court also suggested that the
defendants were entitled to summary judgment on Count I
because the report of Mondzelewski's vocational expert
failed to "relate the effect of Mondzelewski's `medium duty'
restrictions on his ability to perform jobs in the economy"
and failed to "quantify the number or type of jobs he is
precluded from performing due to those restrictions."
Mondzelewski, 976 F. Supp. at 281. We conclude, however,
that this report is sufficient to show for the purpose of
surviving summary judgment that Mondzelewski was
"significantly restricted in the ability to perform either a
class of jobs or a broad range of jobs in various classes.
. . ." 29 C.F.R. S 1630.2(j)(3)(i). Cf. 29 C.F.R. Pt. 1630, App.
S 1630.2(j) (stating that the terms "number and types of
jobs" are not intended to impose an onerous evidentiary
burden but are meant only to require evidence of the
approximate number of jobs from which the individual is
precluded from working).

Yohe's report recounted Mondzelewski's educational and
vocational background and reported that Mondzelewski had
received "extremely low" scores on an achievement test and
a career ability placement test that Yohe had administered.
App. 162. According to his report, Yohe compared
Mondzelewski's profile "to each of the almost 13,000 jobs
listed in the [Department of Labor's] Dictionary of

13

Occupational Titles and found that "there were a total of eight positions that would be suitable for him that essentially involve unskilled work." App. 163. Yohe stated that his investigation showed that for these positions there were "very low employment opportunities" in Mondzelewski's geographical area. Id. He concluded:

> In essence, the best that could be hoped for . . . him, outside of his Pathmark situation, would be a minimum wage type of position in an unskilled light or medium duty capacity. For him to obtain these types of jobs, he would likely need some sort of assistance from a professional Rehabilitation Specialist.

App. 164. Whatever else may be said of Yohe's report, we believe that it is sufficient to show for present purposes that Mondzelewski is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. S 1630.2(j)(3)(i).

We reject Pathmark's argument that Mondzelewski cannot be substantially limited in the major life activity of working because he is now working. In determining whether an individual is substantially limited in a major life activity, a court must examine the individual's situation without accommodation for the individual's impairment. Matczak, 136 F.3d at 937; see also, e.g., Washington v. HCA Health Servs. of Texas, Inc., 152 F.3d 464 (5th Cir. 1998). Here, Pathmark granted Mondzelewski's request for "assistance with lifting of over fifty pounds and with frequent carrying of over twenty-five pounds." Appellees' Br. at 3. Thus, the mere fact that Mondzelewski has been able to continue to perform his job with accommodation does not necessarily mean that he is not disabled.

In sum, we hold that the question whether Mondzelewski's impairment substantially limits him in the major life activity of working cannot be resolved at the summary judgment stage.

III.

A. Mondzelewski next challenges the District Court's decision to grant summary judgment to Pathmark on his

14

retaliation claim. While recognizing that persons who do not have a disability but "who in good faith file formal disability discrimination charges with [the appropriate state agency] or [the] EEOC" may assert a retaliation claim, 976 F. Supp. at 284, the District Court held that "Mondzelewski -- who is not disabled -- cannot recover under the ADA for the particular acts of harassment he has alleged." Id. The Court added that "individuals who are not disabled cannot claim the protections of the ADA for the more trivial acts of harassment that may be visited upon them in response to their requests for assistance." Id. The District Court thus suggested that a retaliation claim can be brought by a person who is adjudged not to have a disability only if that person filed a formal ADA complaint and/or suffered a more severe form of retaliation than would otherwise be required. Id.

After the District Court's decision, this Court held that "a person's status as a `qualified individual with a disability' is not relevant in assessing the person's claim for retaliation under the ADA." Krouse v. American Sterilizer, Co., 126 F.3d 494, 498 (3d Cir. 1997). The Court wrote:

> By its own terms, the ADA retaliation provision protects "any individual" who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA. 42 U.S.C. S 12203(a). This differs from the scope of the ADA disability discrimination provision, 42 U.S.C. S 12112(a), which may be invoked only by a "qualified individual with a disability." An individual who is adjudged not to be a "qualified individual with a disability" may still pursue a retaliation claim under the ADA.

Id. at 502. Under this analysis, we see no basis for holding that a person who is adjudged not to have a disability may not assert a retaliation claim based on some form of protected activity other than the filing of a formal complaint. Nor do we see any basis for holding that such a person must have suffered some form of retaliation that is more severe than the statute would otherwise demand. Consequently, Krouse necessitates reversal here.

B. Although the District Court did not squarely hold that Mondzelewski's retaliation claim could not survive

15

summary judgment because the evidence did not show that Mondzelewski had suffered an "adverse employment action," the Court stated that "it does not believe it would be error" to so hold. Mondzelewski, 976 F. Supp. at 284. In light of this statement, we find it necessary to address this issue.

Mondzelewski argues that "[p]erhaps the most egregious actions" taken against him were the "use of`punishment shifts.' " Appellant's Br. at 30. The District Court, however, wrote that, while this was "Mondzelewski's most tangible complaint," "the change in shifts . . . must be discounted because of the common sense notion that a 9:00 a.m. to 5:00 p.m. shift cannot be considered an extreme hardship given most of this country's workers are governed by that shift." Mondzelewski, 976 F. Supp. at 284. We are unable to agree with the District Court's analysis and instead hold that the change in Mondzelewski's shifts could be found to constitute a change in the terms, conditions, or privileges of his employment and thus to fall within the prohibition of 42 U.S.C. S 12203(a).

This provision states in pertinent part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . .

42 U.S.C. S 12203(a). As we have noted, see Krouse, 126 F.3d at 500, this provision resembles Section 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e-3(a), which makes it an unlawful employment practice to "discriminate" against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter. . . ." Both provisions make it unlawful to "discriminate" against an employee in retaliation for protected conduct.

In Title VII cases, our Court and others have interpreted "discriminat[ion]" to mean conduct that falls within the basic prohibition against employment discrimination found in 42 U.S.C. S 2000e-2(a)(1), which makes it an "unlawful employment practice" to discriminate with respect to "compensation, terms, conditions, or privileges of employment." See Robinson v. City of Pittsburgh, 120 F.3d

16

1286, 1300 (3d Cir. 1997) (citing cases). Courts customarily express this concept by stating that a retaliation plaintiff must show that he or she suffered a "materially adverse employment action." Id. (quoting McDonnell v. Cisneros, 84 F.3d 256, 258 (7th Cir. 1996)). In view of the resemblance between 42 U.S.C. S 12203(a) and 42 U.S.C.S 2000e-3(a), a similar approach is appropriate here. Consequently, we interpret the concept of "discriminat[ion]" under 42 U.S.C. S 12203(a) to mean discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. S 12112(a). We reiterate, however, as we observed in Robinson, 120 F.3d at 1300, that minor or trivial actions that merely make an employee "unhappy" are not sufficient to qualify as retaliation under the ADA, for otherwise every action that an "irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."5 Id. (citing Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).

We hold that Mondzelewski proffered evidence sufficient to establish for present purposes that the change in his schedule may have altered the "terms, conditions, or privileges" of his employment in violation of 42 U.S.C. S 12203(a). He proffered evidence that meat workers generally worked shifts that provided them with certain periods of free time and that did not require them to work weekend evenings consistently. His evidence suggested that his fellow employees considered this type of schedule to be

_____

5. Mondzelewski seems to assert that because the alleged harassment caused him to suffer a "nervous breakdown," the acts are per se retaliatory under the ADA. Mondzelewski erroneously draws support from Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993). The Court, however,
did not set forth a per se rule that if a person suffers "tangible psychological injury," the employer must have engaged in "adverse employment action." Instead, the Court set forth an objective standard: whether a reasonable person would find the conduct hostile or abusive. If an individual's hypersensitivity causes him or her to suffer tangible psychological harm that a reasonable person would not suffer under similar circumstances, then that individual cannot seek protection from the ADA's anti-retaliation provision.

17

a highly desirable benefit. Although Mondzelewski previously had worked under the typical meat worker's schedule, after his second injury, he was singled out to work a different shift. This shift left him none of the customary free time and required him to work every Saturday evening. Moreover, he proffered affidavits of fellow employees stating that only workers that Pathmark intended to punish were assigned to this undesirable shift. Indeed, according to these affidavits, workers referred to these shifts as "punishment shifts." We find this evidence sufficient to raise a triable question as to whether Mondzelewski's terms, conditions, or privileges of employment were altered.

Assigning an employee to an undesirable schedule can be more than a "trivial" or minor change in the employee's working conditions. See Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 116 (3d Cir. 1996) (under Title VII, appointment to undesirable police assignment sufficient to withstand summary judgment on retaliation claim); Collins v. Illinois, 830 F.2d 692, 703 (7th Cir. 1987) (under Title VII, holding adverse action does not require loss of money or benefits but rather may consist of changes in location, duties, perks, or other basic aspects of the job); Hamilton v. Rodgers, 791 F.2d 439, 442 (5th Cir. 1986) (under Title VII, holding district court's conclusion, i.e., a change to night shift constitutes sufficient evidence of retaliatory job assignment, not clearly erroneous), overruled on other grounds, Harvey v. Blake, 913 F.2d 226, 228 n.2 (5th Cir. 1990); McGill v. Board. of Educ., 602 F.2d 774, 780 (7th Cir. 1979) (under 42 U.S.C. S 1983, teacher transferred to a less desirable school is retaliation for protected speech); Florence v. Runyon, 990 F. Supp. 485, 498 (N.D. Tex. 1997) (under Title VII, denying summary judgment where transfer to new position with different work hours raised material issue of fact as to whether plaintiff suffered adverse employment action); Khan v. Cook County, No. 96-C-1113, 1996 WL 432410, at *2 (N.D. Ill. July 30, 1996) (under the ADA, refusing to hold as a matter of law that a transfer to the night shift does not constitute adverse action); Snodgrass v. Brown, No. 89-1171-K, 1990 WL 198431, at *17 (D. Kan. Nov. 26, 1990) (under Title VII, concluding that changes in employee's schedule raised

18

material issue of fact as to whether plaintiff suffered adverse employment action); Maddox v. County of San Mateo, 746 F. Supp. 947, 953 (N.D. Cal. 1990) (under Title VII, permitting retaliation claim where, among other things, employer refused to transfer plaintiff from graveyard shift); see also 2 EEOC Compliance Manual 613:0004, at 613.3 (BNA June 1986) ("Title VII prohibits discrimination with respect to practices or activities such as length of employment contract, hours of work, or attendance since they are terms, conditions, or privileges of employment."). Cf. 29 U.S.C. S 158(d) (obligation to bargain collectively with respect to, among other things, "hours . . . and other terms and conditions of employment") (emphasis added); Meat Cutters Locals v. Jewel Tea Co., 381 U.S. 676, 691 (1965) ("the particular hours of the day and the particular days of the week during which employees shall be required to work are subjects well within the realm of `wages, hours, and other terms and conditions of employment' about which employers and unions must bargain"); Long Lake Lumber Co., 160 NLRB 1475 (1966) (changing employee's schedule from normal workweek to a Tuesday through Saturday workweek violated National Labor Relations Act). Thus, we believe that Mondzelewski has produced evidence that raises a genuine issue as to whether Pathmark altered his terms, conditions or privileges of employment, in violation of 42 U.S.C. S 12203(a), when it changed his work schedule.

We readily agree with the District Court's observation that assignment to a 9:00 a.m. to 5:00 p.m. shift "cannot be considered an extreme hardship given most of this country's workers are governed by that shift." Mondzelewski, 976 F. Supp. at 284. But the critical question for present purposes is not whether Mondzelewski suffered an "extreme hardship," but whether his terms, conditions, or privileges of employment were altered. Nothing in the ADA suggests that employers are prohibited from taking only those retaliatory actions that impose an "extreme hardship." To be sure, the relatively mild nature of Pathmark's allegedly retaliatory conduct may not be without legal or practical significance, but it is not dispositive with respect to the narrow legal question now before us regarding 42 U.S.C. S 12203(a).

19

Although the District Court did not expressly address the other alleged acts of retaliation on which Mondzelewski relies, it appears that the Court may have applied the same "extreme hardship" test there as well. Moreover, the Court did not address 42 U.S.C. S 12203(b), which arguably sweeps more broadly than 42 U.S.C. S 12203(a). Subsection (b) provides in pertinent part that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having . . . exercise[d] . . . any right granted or protected by this chapter." On remand, the Court should consider whether Mondzelewski has proffered sufficient evidence to survive summary judgment under this subsection as well as under subsection (a).

Pathmark has urged us to affirm the grant of summary judgment on the retaliation claim on several alternative grounds. Pathmark contends that Mondzelewski did not make a retaliation charge in his EEOC complaint. Pathmark also argues that it proffered a legitimate explanation for assigning Mondzelewski to the shifts in question -- viz., because it was better able to provide reasonable accommodation for his lifting restrictions during those shifts -- and that Mondzelewski failed to raise a triable issue with respect to Pathmark's explanation. The District Court did not reach these issues, and we decline to reach them at this time. Pathmark can renew these arguments on remand in the District Court.

IV.

For the reasons explained above, we reverse the grant of summary judgment on Counts I and II and remand for further proceedings. We also vacate the dismissal of the counts asserting state-law claims so that the District Court can reassess its decision relating to those counts in light of its disposition on remand of the remaining federal claims.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

20